Mary Jean Miller, Administrator of the Estate of Paul Richard Miller, Deceased, Plaintiff-Appellee, v. The Pillsbury Company, a Corporation, and Mack Pargin, Defendants-Appellants.

Gen. No. 10,550.

Fourth District.

February 8, 1965.

403

Webber, Webber & Welsh, Richard J. Welsh, of Decatur, for appellants.

Greanias & Owen, of Decatur, for appellee.

SMITH, J.

Defendants, the Pillsbury Company and its employee, a truckdriver, appeal from two judgments. One judgment is against both of them on a wrongful death claim, the other denies recovery to Pillsbury on its counterclaim against the plaintiff and the employer of plaintiff's deceased for cargo damage. They point to errors in the admission of certain photographs, testimony of an accident reconstruction expert, and the court's direction to the jury to reconsider the verdicts on their first return. Contention is also had that plaintiff failed to negate contributory negligence on the part of the deceased, and that the judgments are against the manifest weight of the evidence.

Three trucks were involved in the fatal accident. One was driven by plaintiff's decedent, and the other two by employees of Pillsbury. A sideswipe occurred between deceased's truck and one of the Pillsbury trucks as they passed in opposite directions, causing

deceased's truck to careen down the highway and into the path of the other Pillsbury truck. The counterclaim relates to the cargo in the second Pillsbury truck. Not involved in the accident was a third Pillsbury truck which had preceded the other two. There were no eyewitnesses, or more correctly, none who could testify, meaning that the factual determinations that had to be made, had to be inferred from the circumstances of the accident. Some of the inferences, including the very important one as to who was over the center line, were drawn by an accident reconstruction expert for plaintiff. The propriety of admitting such testimony is, therefore, a matter of the utmost importance.

Defendants' attack on such proof is two-pronged: (1) Such proof was incompetent; and (2) if competent, incredible. Only by implication is the expertise of the expert questioned.

■■ With regard to competency, it is true that courts are leery of seeing too many inferences drawn by experts, thus leaving only the inferences to be tried rather than the facts themselves. This reluctance has been cast in such phrases as, "usurping the jury's function," "invading the province of the jury," and "confusion of trial issues." While eschewing a battle of words by experts, the modern thrust, if we may call it that, is away from a too stringent delimitation, and this has been accomplished without negating the concept that the trier of the fact should try the facts. In fields outside of or beyond their ken or understanding, or if within, difficult of comprehension, experts have often been called upon to assist the trier in coming to a proper finding or verdict. Specifically has this been true in the reconstruction of vehicular collisions. We are of the persuasion that in a proper case, an expert should be permitted to give his opinion as to how an accident occurred, and to infer

406

out loud how the vehicles involved may have acted before, at the time of, and after an accident. We agree with this statement from 10 Proof of Facts, page 144, "Reconstruction of Accidents:"

> "The trend is to allow expert opinion testimony reconstructing motor vehicle accidents from physical evidence, provided the expert witness is sufficiently qualified in the particular field, has before him enough physical evidence to provide him with the important variables involved, makes his reasoning process clear to the trier of fact, and provided his conclusion from the physical evidence is not contrary to those facts or 'in conflict with common observations and experiences of men.' "

In Thomas v. Cagwin, 43 Ill App2d 336, 193 NE 2d 233, a witness who possessed the requisite expertise in this field was permitted to testify that in his opinion the point of impact was in the northbound lane, a matter, as might be expected, of extreme importance. There the court observed:

> "Although this type of evidence should be admitted with caution, we believe that its admissibility rests within the sound discretion of the trial judge and in this case we cannot say that the trial judge abused his discretion."

In another case, Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 181 NE2d 386, such expertise was denied admittance. There the expert (also the expert here) was offered for purposes of tracing the movements of a truck trailer as it rounded a curve. We quote:

> "His testimony would be based upon principles of engineering and physics relative to the movement of vehicles under relative circumstances at

relative speeds. He would testify to the arc made by the rear wheels of the trailer and the forward wheels of the tractor, and translate that turn onto the plat introduced by plaintiff to which all other witnesses referred in their testimony regarding the location of the vehicles involved at various times. . . . The course which the truck took in making the turn at the intersection was a matter of common observance of the witnesses who saw the occurrence. The jury is able to properly comprehend and weigh the facts without the aid of an expert. To permit an expert witness to reconstruct the scene of a collision and retrace the movement of a vehicle from the point of impact back to some point prior thereto, and testify in contradiction to the testimony of witnesses who viewed the occurrence, would open the door in every personal injury case to expert testimony on factual matters, and would be an invasion of the province of the jury."

In this particular case, there *were* eyewitnesses, but whether their presence was a factor in denying admission is something we do not know, of course, for sure. We too can only infer.

In 66 ALR2d 1048, in an annotation entitled "Admissibility of Opinion Evidence as to Point of Impact or Collision in Motor Vehicle Accident Case", there is this statement on page 1050:

"Although some cases hold or recognize that skilled or expert opinion evidence as to the point of impact or collision is not admissible . . . there is strong, and apparently growing, authority holding or recognizing that skilled or expert opinion evidence is admissible upon the question.

"These courts recognize that opinions given by skilled or expert witnesses aid the jury, or the

court sitting in lieu thereof, in drawing correct inferences from the raw and unsorted facts, and that such evidence does not usurp the province of the jury, since the jury does not have to accept the witness' opinions."

■ Considering all factors, we are of the opinion that this was a proper case for expert testimony in this field, and that the court did not abuse its discretion in allowing its introduction. This brings us to defendants' next point, that even if such proof is competent, it was not competent in this case for the reason that the expert's reconstruction was incredible, in the sense of being impossible of belief.

■■ Credibility of evidence is to be distinguished from credibility of witnesses, although the distinction is sometimes more apparent than real, though not in this case. While the credibility (or incredibility) of a witness is almost always a question for the trier to determine, evidence, sometimes even expert testimony, may be so incredible, so in conflict with the immutables, that it is incompetent and hence inadmissible. Witnesses, no matter how expert, will not, for example, be permitted to repeal the law of gravity. Proof that is clearly in conflict with the laws of science, and with the common observations and experiences of men, is incompetent.

■ It is our duty therefore to examine closely the testimony of the accident reconstruction expert and come to our own conclusion as to whether it is subject to disbelief and incredible. We have done this, and we are forced to the conclusion that defendants' contention must be rejected. We cannot agree that this expert's testimony transcended the bounds of reason or was in conflict with the laws of science or the common observations and experiences of men. It was proper for the court below to admit such proof for such credence as the jury cared to give it.

A further point is made by defendants with regard to the expert's reconstruction of the accident. They assert a lack of foundation proof, not that the expert lacked expertise, but rather that certain material facts on which he relied were relied upon improperly. They refer us to certain photographic exhibits which were of decedent's truck. They were taken in a junk yard a month or so after the accident. When photographed, the expert was present, in fact, he identified the exhibits at the trial. Hence, we assume it is correct to say that he also relied upon his personal examination as well as the photographs in coming to his conclusions. After all the Chinese proverb, "A picture is worth ten thousand words," is an equation and can be read backwards. Defendants argue that there was an absence of proof that the truck when photographed and examined was in the same condition that it was immediately following the sideswiping. The question of substantial sameness is therefore present and relevant as to both the exhibits and the expert's examination.

It would have been ideal, of course, if the picture taking and the expert's examination could have been had at the scene immediately following the accident. Still, the question is not *when* the truck was photographed and examined, but whether it was in substantially the same damaged condition as it was following the collision. Plaintiff had the burden of showing that it was, and this is what we call foundation proof. There was evidence that the removal from the scene did not inflict further damage, at least to those parts relied upon for the reconstruction and that after its deposit in a junk yard, the truck remained undisturbed. There was also evidence that some of the photographs accurately portrayed the damage to the truck prior to removal from the

scene. Such proof was sufficient to accord to the exhibits and the expert's examination, the status of admissibility for his reliance thereon.

 In reconstructing the accident, the expert gave it as his opinion that the sideswiping occurred while defendants' truck was across the center line and in the lane of travel of decedent's truck. From such opinion, it was proper for the jury to infer, if they cared to, that the deceased was in the exercise of due care. and caution. Furthermore, the driver in the Pillsbury truck was not involved in the accident, who had passed decedent's truck just prior to the sideswiping, continued his observation of it through his rearview mirror. He stated that deceased's truck was proceeding in a normal manner, at a reasonable rate of speed, and on its side of the highway. Simply because the sideswiping itself was not mirrored does not destroy the probativeness of his testimony. True, for all this witness knew, deceased's truck may have been across the center line at the psychological moment, as defendants argue, but that is what it is— argument, and such goes to the weight to be given such proof, not its admissibility. There was, in our opinion, sufficient evidence for a jury to find that decedent was free of contributory negligence.

A singular happenstance occurred at the time of the first return by the jury. They found for plaintiff, but unlike their second return, they also found for Pillsbury on its counterclaim. At this juncture, the court addressed the jury as follows:

> "I find what you have returned is what we call inconsistent verdicts; that they cannot stand. I am going to send you back for further consideration and will have the reporter to retype the forms of verdict. In other words, these verdicts

411

are inconsistent, in that they cannot both be liable as you found. . . ."

On the second return, the jury returned the verdicts appealed from, for plaintiff on the wrongful death action and against Pillsbury on its counterclaim.

██ ██ We think the court properly handled a touchy situation. The two verdicts were clearly inconsistent. A verdict can always be corrected prior to recording and discharge, and it was perfectly proper for the court to tell the jury of the inconsistency and to send them back to reconsider. Since the court's comment pertained to the verdict, it did not have to be in writing, as instructions must.

There was sufficient evidence to sustain the judgments appealed from, and accordingly, they are not against the manifest weight of the evidence. We conclude, after the most careful consideration, that they were properly entered and they are, therefore, affirmed.

Affirmed.

SPIVEY, J., concurs.

CROW, P. J., dissents.