(No. 45448.

HARDWARE STATE BANK, Admr., Appellant, v. EDWARD COTNER, JR., Appellee.

*Opinion filed October 1, 1973.*

WILLIS P. RYAN, HARLAN HELLER and DALE A. CINI, of RYAN and HELLER, LTD., of Mattoon, for appellant.

JACK E. HORSLEY, WILLIAM E. LARRABEE and RICHARD F. RECORD, JR., of CRAIG & CRAIG, of Mattoon, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Hardware State Bank, as administrator of the estate of Jerry Lee Kidwell, deceased, filed an action against Edward Cotner, Jr., in the circuit court of Moultrie County for wrongful death. (Ill. Rev. Stat. 1967, ch. 70, par. 1 *et seq.*) A jury found for plaintiff and awarded damages in the amount of $55,958.90. Judgment was

entered pursuant thereto. The appellate court, one justice dissenting, reversed, holding that deceased's freedom from contributory negligence had not been established as a matter of law (*Hardware State Bank v. Cotner, 7 Ill. App. 3d 212*), and we granted plaintiff's petition for leave to appeal. Defendant urges that if we should determine that the appellate court erred, other issues concerning various evidentiary rulings, the sufficiency of the complaint, jury instructions and the amount of the verdict should be considered.

The facts giving rise to this occurrence are not in dispute. Deceased worked on defendant's farm for nine months prior to his fatal accident and in return for his services received a salary, living accommodations for himself and his family, as well as other benefits. On January 2, 1968, at 7:00 A.M., deceased arrived at defendant's home and stayed for about one-half hour. Deceased was informed that he might either obtain propane gas to be used in thawing water pipes or take the tractor to the farm and fill several animal-feeding bins. Deceased chose the latter activity.

Grain was placed in these bins from an auger wagon which was hitched to the tractor. An unguarded power shaft with several universal joints also connected the tractor and wagon. This shaft was powered by the tractor and would rapidly rotate when a clutch mechanism, located on the right side of the tractor near the steering wheel, was engaged. The rotating shaft in turn powered a "worm type" auger device at the bottom of the wagon. This device would push grain to the rear of the wagon forcing it through a spout into the bins. The elevation of the spout could be adjusted by means of a chain attached thereto, and the spout could be swiveled slightly sideways. At the front of the wagon, just above the power shaft, was a lever that was used to regulate the amount of grain being transmitted into the auger device.

Shortly before 8:00 A.M., deceased's naked body was

found wedged between the power shaft and hitch. His right arm had been completely severed and his heavy clothing was entangled around the shaft. The uneven ground in the area was wet and slippery. The auger wagon was empty and grain overflowed from one of the feeder bins.

A prior employer testified that deceased had been a responsible worker. Robert Younger, a farm employee who had briefly worked with deceased, said that deceased was careful when he was around farm machinery.

Defendant was called as an adverse witness. (Ill. Rev. Stat. 1969, ch. 110, par. 60.) He corroborated other witnesses' observations concerning deceased's work habits. He explained that he had purchased the wagon which at that time was mounted on a truck. As he directed, a welder cut the wagon from the truck and adapted the wagon for use with the tractor by installing the hitch and power shaft. On the day of the accident the tractor's seat was enclosed with a plastic and canvas covering apparently because of the cold weather. The only way to dismount from the tractor at this time was by means of a step located in front of the left rear wheel. Defendant further stated that he and deceased had previously used the wagon when they filled the bins together and that deceased had done this work alone on 20 to 25 occasions. He described the bin-filling procedure as requiring that the spout be raised to an upright position, the tractor driven to an empty bin, the spout lowered and the power shaft activitated.

Dr. Donald Hunt, a professor of agricultural engineering at the University of Illinois, was called by plaintiff, who sought to establish his qualifications as an expert witness over repeated defense objections. This witness had taught courses dealing with farm machinery and had designed certain parts of several machines. He was a consultant on various farm machine problems and had authored several books on the subject, of which portions

were devoted to power shafts and similar mechanisms on tractors. His familiarity with this type of device dated back to his youth when he worked on a farm. The trial court overruled all objections and found Dr. Hunt qualified to express his opinion both as an expert as well as a layman.

This witness then testified as to standards formulated by the American Society of Agricultural Engineers which were promulgated to familiarize farm implement manufacturers with certain design procedures. These standards suggested that a shield be placed over an exposed rotating power shaft to lessen the possibility of an operator coming in contact with it. Dr. Hunt related that his personal observations of farmer-designed machines of this nature in both this State and surrounding areas demonstrated that shields were used. Moreover, he was of the opinion that the custom and practice in Illinois complied with these guidelines. He testified that an inverted "U"-type shield could be placed over the shaft as a guard. This type of shield had been developed nearly 50 years ago. He estimated the cost of this item at about $50.

The trial court, as it had done prior to *voir dire,* precluded defendant from informing the jury of the facts that deceased's wife had remarried and that the defendant had adopted deceased's child.

It is basically plaintiff's position that the majority opinion of the appellate court failed to give due consideration to testimony regarding deceased's careful work habits. Such evidence, it argues, created a factual issue as to deceased's contributory negligence which was properly submitted to the jury. Defendant, however, maintains that there exists no doubt that deceased dismounted from the tractor, thereby placing himself in a position whereby his clothing might have come in contact with the revolving power shaft which deceased must have known was dangerous. Defendant argues that deceased should never have gotten off the tractor and that in so doing he violated the customary procedure utilized in filling the bins.

Defendant also avers that no one directed deceased to alight from the tractor while the power shaft was in operation and, if deceased found it necessary to do so, he could have easily deactivated the device. Thus defendant concludes that deceased's careless manner in performing his work bars recovery.

The rule of law applicable to this issue is set forth in *McElroy v. Force, 38 Ill.2d 528,* where at page 534 we said: "The plaintiff in a personal injury action has the burden of proving that the person injured exercised the proper degree of care for his own safety at the time of the occurrence. However, in wrongful death cases where there are no competent eyewitnesses the plaintiff cannot prove his decedent's exercise of due care by direct testimony. In such instances, considering the practical problem of demonstrating freedom from contributory negligence, evidence of the prior careful habits, if pertinent, of the deceased may be admitted as tending to prove the deceased's exercise of due care." (See also *Plank v. Holman, 46 Ill.2d 465, 470.*) When such proof is presented there is a presumption that deceased was in the exercise of due care which may be sufficient to submit the issue to the jury. *Casey v. Chicago Rys. Co., 269 Ill. 386, 391.*

In the present case the record does not irrefutably support the position that the usual method for filling the bins necessitated that those involved remain on the tractor when the power shaft was turned on. Several factors are relevant to this conclusion. Defendant never specifically testified that this was the customary procedure. Moreover, it is undisputed that, on occasion, both deceased and defendant performed the work function together, thereby implying that at least one may have been off the tractor during this time. The grain flow into the auger was manually controlled by a lever located on the wagon above the power shaft, and the spout also could be manually swiveled, thereby resulting in a more efficient distribution of grain in the receptacle. It is perceivable that such

activities would have necessitated a single operator being near the auger wagon while the power shaft rotated.

We further reject defendant's argument that deceased's knowledge of the danger precludes recovery. Such knowledge in itself is not a sufficient basis to find that deceased was contributorily negligent as a matter of law. (*Devine v. National Safe Deposit Co., 240 Ill. 369, 374; Swenson v. City of Rockford, 9 Ill.2d 122, 127.*) The primary question is whether one who knows of the danger employs reasonable precautionary measures to safeguard his well being. *Devine v. National Safe Deposit Co.; Carter v. Winter, 32 Ill.2d 275, 284;* Restatement (Second) of Torts, sec. 466, comment c.

The issue of contributory negligence is ordinarily resolved by the jury. (*Jines v. Greyhound Corp., 33 Ill.2d 83.*) However, conduct is contributorily negligent as a matter of law only when the totality of the evidence, taken in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary conclusion could ever stand. (*Baran v. City of Chicago Heights, 43 Ill.2d 177, 181.*) Here evidence of deceased's work habits raised a presumption of due care, and from examination of the record we cannot say that all the evidence and the reasonable inferences which might be drawn therefrom so completely favor the defendant as to set aside the jury's contrary determination.

Defendant makes the bare contention that recovery is barred and deceased was contributorily negligent as a matter of law, because he violated the Farm Machinery Act. (Ill. Rev. Stat. 1967, ch. 70, pars. 3, 4.) That statute mandates that devices which include machines connected to a power take-off by means of shafting be properly enclosed. It creates a cause of action for damages against "Any person owning or running" a machine which violates the Act. Contrary to defendant's assertion, a plain reading of the statute does not preclude a person from recovering damages predicated upon any other theory of liability for

injuries he sustains while operating a machine not in compliance with the statute. Nor do we believe that violation of said statute establishes contributory negligence as a matter of law. As we have said, "Violation of the law by the injured party at the time of the accident is usually evidence of negligence, but there remains the question of fact whether the illegal act is the proximate cause of the injury." (*Bonnier v. Chicago, Burlington & Quincy R.R. Co., 2 Ill.2d 606, 612.*) In this case defendant did not raise this factual consideration before the jury and we will not consider this matter.

It is further urged that there is no *prima facie* showing of negligence on the part of the defendant, who argues that necessary prerequisites to recovery are proof that the item causing injury was defective, that defendant knew or could have known of the defect, and that plaintiff lacked knowledge of the danger or a similar means to obtain such information as that of defendant. Since deceased was aware of the condition and the consequences which might occur if he came in contact with the mechanism, defendant concludes that he did not breach any duty which he might have had toward deceased. Defendant's argument is similar to that rejected in *Devine v. National Safe Deposit Co., 240 Ill. 369, 374,* wherein the court characterized such an analogous contention as "merely an attempt to apply the doctrine of assumed risk and to give it another name." From examination of the trial court proceedings and pleadings it is evident that this theory was not specifically raised as an affirmative defense. Rather the fact that deceased may have known of the dangerous condition would only bear upon the issue of his contributory negligence—a matter previously determined adversely to defendant's position.

A defendant upon whom a duty is placed is negligent when he acts or fails to act in a manner attributable to a reasonably careful person. (*Haymes v. Catholic Bishop of Chicago, 41 Ill.2d 336, 339.*) Here ample evidence was

introduced from which the trier of fact might conclude that defendant could have reasonably shielded the dangerous power shaft in order to lessen the possibility that a person, such as deceased, might come in contact with it.

Defendant asserts that the trial court erred in excluding evidence of the remarriage of deceased's widow and evidence of the subsequent adoption of deceased's infant son by defendant in mitigation of damages. He argues that in *McDaniel v. Bullard, 34 Ill.2d 487,* this court held that if the beneficiary, who may sustain a wrongful death action, dies, the action does not abate but the measure of damages is computed only to the date of the beneficiary's death. In *Van Beeck v. Sabine Towing Co., 300 U.S. 342, 81 L. Ed. 685, 57 S. Ct. 452,* the United States Supreme Court reached a similar result in construing a Federal maritime statute. It is defendant's position that these cases recognize a limitation which may lessen damages. He maintains that had deceased's widow and child subsequently died, defendant would have been able to present this factor in mitigation of damages. He concludes that to allow the jury to consider only one change of status (death of the beneficiary), which materially affects the true consequences of a wrongful death action, is arbitrary and violative of due process and equal protection. Moreover, he advances policy considerations for the introduction of such evidence, noting, without citation of authority, that the rule in Illinois prohibiting a jury's consideration of a widow's remarriage was developed when the Wrongful Death Act limited the amount of recovery. Since the removal of this limit, defendant maintains that no justifiable reason exists to prohibit this evidence. He is unable to cite any authority relating to his position on the issue of adoption.

We find our recent decision of *Watson v. Fischbach, 54 Ill.2d 498* dispositive of these arguments. There we reaffirmed our position, which prevails in a majority of jurisdictions, that the remarriage of a surviving spouse does

not affect the issue of damages in a wrongful death action. However, we held that "prospective jurors may be told by the judge that a plaintiff has remarried. Beyond this point, however, we believe defendants have no legitimate interest in exploring. *** Beyond the *voir dire,* questions, comments or argument relating to the remarriage will, ordinarily, be improper." The reason for disclosure of remarriage during *voir dire* was to alleviate false testimony by the surviving spouse concerning marital status. The same result is appropriate to the adoption of the deceased's surviving children. (See *Luddy v. State (1968), 30 App. Div. 2d 993, 994, 294 N.Y.S.2d 87, 89, aff'd (1969), 25 N.Y.2d 773, 303 N.Y.S.2d 522.*) The trial court need not disclose information concerning adoption where, as here, there exists the greater probability that nondisclosure may be accomplished without false testimony. We therefore reject defendant's argument premised on policy considerations.

His constitutional bases are also without merit. The *Van Beeck* and *McDaniel* decisions were not premised on constitutional reasons but primarily on grounds of statutory construction. Specifically, we find no equal-protection violation in refusing to admit evidence of remarriage and adoption in mitigation of damages in a wrongful death action. There exists no invidious discrimination between this evidence and that of the death of the beneficiary because there is a reasonable basis for differentiation. It has been recognized that to allow evidence of remarriage would permit the introduction of matters of a highly speculative nature. (*Smith v. Wells (1972), 258 S.C. 316, 188 S.E.2d 470;* Annot. (1963), 87 A.L.R.2d 252.) This same rationale is applicable to adoption. However, we believe that evidence of the death of the beneficiary does not pose this problem.

Moreover, there is no violation of due process, which has been defined "as an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect

his rights before a court having power to hear and determine the case." (*Kazubowski v. Kazubowski, 45 Ill.2d 405, 417-418, cert. denied, 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188.*) These requirements have been met in the present case, which fully and fairly determined liability.

Defendant challenges the testimony of Robert Younger concerning his opinion of deceased's work habits. He avers that a witness may only testify as to a general conclusion on this matter and that counsel for plaintiff far exceeded this standard by specifically questioning Younger as to his observations on a prior occasion which resulted in the introduction of immaterial testimony. His contention is without merit, for the record reveals several defense objections that plaintiff had failed to establish a proper foundation for this witness's opinion, thereby necessitating these inquiries.

It is argued that Dr. Hunt's testimony should not have been allowed. Defendant asserts that there was "no connection" demonstrated between the safety shields he described and their availability or adaptability to defendant's equipment; that Dr. Hunt was not a safety expert and thus not qualified to testify on such matters; and, that the "standards" he presented concerning safety precautions were improper. We find defendant's first assertion without merit. Dr. Hunt's testimony established the availability of safety shields and the adaptability of these devices to machinery designed by farmers. Whether a witness is qualified to testify as an expert is within the sound discretion of the trial court. (*Supolski v. Ferguson & Lange Foundry Co., 272 Ill. 82, 89.*) Having examined Dr. Hunt's background set forth in the record we find that the trial court's determination was amply supported by the evidence. We further reject defendant's challenge to the admissibility of the "standards" introduced by Dr. Hunt. As was reiterated in *Merchants National Bank of Aurora v. Elgin, Joliet & Eastern Ry. Co., 49 Ill.2d 118, 125,* the

standards " 'which plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did.' " (Quoting from *Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 332.*) The same reasoning may be applied in the present case and no error was thereby committed by introduction of this evidence.

Defendant further urges error when the trial court did not strike portions of the complaint. The sections of the complaint charge defendant with negligence in that he failed to provide deceased with a safe working area, failed to shield the power shaft, failed to warn deceased of the danger presented by this unguarded mechanism and required deceased to use this device in an area which was slippery. Basically defendant advances the same grounds concerning the sufficiency of the evidence presented in support of prior contentions which we have discussed and decided adversely to his position. Further consideration is unnecessary.

Defendant challenges the propriety of certain jury instructions. He objects to I.P.I.—Civil, No. 1.03, which advised the jury that it might draw inferences from circumstantial evidence. He says that this instruction is erroneous for the jury would believe that such evidence did exist when, as he concludes, none did. Further argument is directed to I.P.I.—Civil, No. 10.08, concerning evidence of careful habits, which he asserts was not properly presented and which he maintains conveyed to the jury the inference that evidence of careful habits would overcome any contrary evidence found at the scene of the accident. He attacks I.P.I.—Civil, No. 2.07, which permits the jury to consider the number of witnesses who testified to a fact in its determination if that fact was proved. He argues that this instruction inferred that

plaintiff might sustain its burden of proof by merely producing a greater number of witnesses.

Defendant's arguments concerning the propriety of the aforementioned instructions are without merit. Having examined the record, we conclude that there was circumstantial evidence presented from which the jury might draw reasonable inferences. Defendant misconstrues the instruction concerning deceased's careful habits, for it specifically provides that the inference of due care is "overcome by believable evidence." He similarly misinterprets the instruction pertaining to the number of witnesses presented, for the remainder of that instruction states that "the number of witnesses alone is not conclusive if the testimony of the lesser number is more convincing." We have held that instructions are to be considered in a series. (*Baran v. City of Chicago Heights, 43 Ill.2d 177, 182.*) After review of the instructions, we conclude that the jury was properly instructed.

Other errors of which defendant complains are based on his contention that evidence of remarriage and adoption should have been admitted. Having previously found no error in the trial court's exclusion of these matters, discussion is unwarranted.

For these reasons the judgment of the appellate court is reversed and the judgment of the circuit court affirmed.

*Appellate court reversed; circuit court affirmed.*