MORRIS ROTH et al., Plaintiffs-Appellees, v. HARLEY F. MEEKER, Defendant-Appellant.

Third District    No. 78-195

Opinion filed April 18, 1979.—Rehearing denied June 18, 1979.

Stanley L. Tucker and Michael L. Neff, both of Hartzell, Glidden, Tucker and Neff, and Carthage, for appellant.

Ronald C. Tenold, of Standard and Tenold, of Monmouth, for appellees.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant Meeker appeals from a judgment returned against him and an award of damages to the plaintiffs Roth and Miller after trial by jury in the circuit court of Henderson County.

The plaintiffs Roth and Miller filed an eight-count complaint against

the defendant Meeker, the crux of which alleged that they had been damaged in their cattle-breeding operation as the result of Meeker's refusal to vacate possession of certain premises being leased by the plaintiffs, and further by his intermingling of his livestock with that of the plaintiffs and further by his commission of other acts to the detriment of the operation of the plaintiffs Roth and Miller, which was the breeding of Angus cattle.

A lengthy trial ensued between the parties and a great portion of the testimony adduced was conflicting. There is, however, no conflict as to the fact that the defendant Meeker consummated a sale of his farm in Henderson County to a Mr. Mackey on April 9, 1976. The sale was effectuated by an agreement for deed entered into between Meeker and Mackey and provided for the sale of 364 acres, possession to vest in the purchaser Mackey as of the date of the contract, April 9, 1976, with the exception of the dwelling house located on the farm, possession of which was to be retained by Meeker until October 1, 1976.

On April 10, 1976, the plaintiffs Roth and Miller entered into a lease with Mackey for a portion of the farm for the use of the same in their joint venture of breeding livestock. On the same day the plaintiffs purchased cows from the defendant at an auction sale which was held on the real estate which Meeker had agreed to sell to Mackey. Shortly after the purchase of the livestock by the plaintiffs they released the same plus additional livestock on the premises which they had orally leased from Mackey.

As we have previously stated, the trial between the parties was lengthy and from an examination of the record it is abundantly clear that it was hotly contested and could well be referred to as the Battle of Bull Run of Henderson County. Governor Ford in his memoirs relates that the enactment of the "Little Bull Law" by our legislature in 1832 inflamed and aroused the anger of our pioneer forefathers. While we will not attribute anger to the participants and their counsel in this case, it is nevertheless evident that a spirited contest took place during the trial of this case. The jury heard conflicting evidence as to commingling of livestock which allegedly resulted in offspring which could not be registered as purebreds; they heard evidence of alleged acts of the defendant which interrupted the plaintiffs' artificial insemination program; also evidence as to the cause of a disease commonly known as pinkeye which was contracted by the animals, as well as evidence to the effect that the defendant Meeker refused to deliver registration papers for a portion of the cattle sold by him to the plaintiffs which prevented the latter from registering certain cows and calfs with the American Angus Association. After hearing the evidence the jury returned a verdict in favor of the plaintiffs in the sum of $46,800.

We will set forth a more detailed recitation of facts and trial procedures as they become pertinent to a determination of the issues raised in this appeal, and a plethora of issues has been raised by the defendant.

We prefer to first direct our attention to the defendant's contention that an oral instruction by the court to the jury after the return of a verdict, which was to the effect that the jury again retire and adjust its verdict, is improper and constitutes reversible error. In addressing ourselves to this contention it is necessary that we set forth the sequence of events which formed the basis for the trial court's action. As previously noted, the plaintiffs' complaint contained eight counts, some but not all of which would support an award of punitive damages. After the jury had retired and deliberated for approximately four hours the court, after being so requested by the jury, gave written instructions to the jury in response to its written inquiry concerning an award of punitive damages. The court's instruction was identified as instruction #10 and was given in the presence of counsel for all parties. The defendant objected to this instruction, which was as follows:

"The jury is hereby instructed that you may, if you so desire or if you want to, on the basis of the law and the evidence in the Court's verdict instruction, award to the plaintiffs, in addition to any other damages, you may have awarded, an award of punitive damages if:

1) You find that defendant was guilty of wilful and wanton conduct which proximately caused damage to the plaintiffs, and

2) if you find both plaintiffs free from contributory wilful and wanton conduct, and

3) if you believe that justice and the public good requires it.

You are hereby further instructed that punitive action can be taken if the defendant is guilty of wilful and wanton conduct on any count or counts and both plaintiffs are free from contributory wilful and wanton conduct on that particular count or counts.

You are hereby further instructed that if you find the defendant guilty of wilful and wanton conduct, under the law and the evidence, that you write on that verdict form as follows:

'We, the jury, find the defendant guilty of wilful and wanton conduct on the following counts.

_____

_____

_____

_____

and place the count numbers in the blanks.' "

■■ The defendant's objection to this instruction was predicated upon several grounds. First he argues that the use of the words "if you desire or if you want to" leaves the matter of assessing punitive damages entirely to the whim of the jury. We disagree, since the complained of words "if you so desire or if you want to" are modified and limited by the words "on the basis of the law and the evidence." It is clear that the jury could assess punitive damages if it wanted to only if such assessment had a basis in the law and was supported by the evidence.

■■ The defendant further predicated his objection on the grounds that both plaintiffs should be free from contributory, wilful and wanton conduct both "before and at the time of the occurrence." We find no merit in this argument, since when read in conjunction with other instructions the jury could only be well aware of the time period when the conduct of the parties was to be considered. Assistance to jurors is commendable; however, giving instructions which contain language which could only be considered elementary is an affront to their intelligence.

■■ Lastly the defendant's objection to instruction #10 was that the award of punitive damages could well be granted on any count in the complaint, while only counts II and VIII would support such an award. There is merit to this contention since such did occur; however, this matter was corrected by the trial court and in fact in the final verdict no award of punitive damages was made, so this contention of the defendant became moot.

Subsequent to the jury receiving instruction #10 further written inquiries and responses ensued between the court and jury. It should be noted that at all times counsel for the plaintiffs and defendant were present, a requirement recommended by *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344.

After deliberating approximately seven hours the jury returned to open court with the announcement that it had reached a verdict. The jury's verdict showed that the defendant had been found guilty of wilful and wanton misconduct on counts I, III and VI. Before the jury could be polled the court indicated that it was going to instruct the jury that counts I, III and VI would not support a punitive damage award and that if the damages awarded on these counts were punitive the jury would be advised to eliminate them. The defendant moved for a mistrial which was denied. The following colloquy then took place instituted by the trial judge:

"We have a problem on the verdicts, and I think that they may be inconsistent, and it is probably due to the alter instructions, my misunderstanding of probably what you wanted, and so on, but on this instruction which I sent out to you later, I want to call to your attention that counts I, III and VI are not punitive damage counts, so if there are any punitive damages—if you have awarded any

punitive damages in counts I, III, and VI, I am going to ask you to reconsider your verdict and adjust them because those are not punitive damage verdicts. Do you understand what I am saying?"

The foreman then stated "What do you mean, Adjust?"

The court stated:

"I am saying if any of the awards under counts I, III, and VI contained any punitive damages in your thinking, in your deliberations, I am going to ask you to take out the punitive damages and write down a new figure, if that is the case on your verdicts for counts I, III, and VI. Okay?"

Juror Marjorie Anderson then asked the court the following question in open court in the presence of the other jurors:

"If we awarded punitive damages on any of those counts, what do you mean—we had an amount set aside in each of the counts, and punitive damages listed for counts II and VIII, right?

By the court: Right.

By Mrs. Anderson: I don't get what you mean by adjusting the amount. Do you mean the punitive damages were considered when we set the full figure?

By the court: I can't tell from this verdict form here, which is the one I sent in to you later, whether or not you included punitive damages in counts I, III and VI. They are not punitive damage counts, so I am going to ask that if there are any punitive damages figured in those awards that you eliminate the punitive damages, I don't know if you have added punitive damages in there or not. If you have, take them out, and if you haven't, leave them stay.

By the Foreman: We didn't.

By the court: I will give you a chance to reconsider and rearrange the verdicts and let it go at that. Let the record show the jury is given back the verdicts for reconsideration at 8:00 p.m."

The jury after deliberating for a brief space of time returned a verdict for both plaintiffs in the total amount of $46,800. In this verdict no punitive damages were awarded.

■ In regard to the defendant's argument that the trial court committed error in orally instructing the jury, we first entertain some doubt as to whether the trial judge's remarks should be categorized as instructions. We believe that the remarks could be more properly classified as directives. We, however, see no merit in arguing semantics. The trial judge's remarks, whether they be termed instructions or directives, were permissible. A trial court can properly direct reconsideration by a jury of inconsistent verdicts prior to recording and discharge, and the directive is not required to be in writing as instructions may be. (*Miller v. Pillsbury Co.* (1965), 56 Ill. App. 2d 403, 206 N.E.2d 272, *aff'd* (1965), 33 Ill. 2d 514,

211 N.E.2d 733.) Since the trial court's remarks pertained to the verdict they were not required to be in writing as the court's instructions as to the law must be. *Miller v. Pillsbury Co.*(1965), 56 Ill. App. 2d 403, 412, 206 N.E.2d 272, 276.

We further cannot agree with the defendant that the jury's first verdict became a final verdict and judgment upon his request to poll the jury. A jury's finding does not become a verdict until it is accepted by the court and entered of record and until the jury is discharged the finding is within their control and may be changed by them. *Schmidt v. Chicago City Ry. Co.* (1909), 239 Ill. 494, 88 N.E. 275; *Lenartz v. Funk* (1922), 224 Ill. App. 180.

■■ We agree with the defendant that inconsistencies were present in the jury's first verdict, but we do not agree with his assertion that such inconsistencies vitiate the subsequent verdict. Where several causes of action are charged and a general verdict results, that verdict will be sustained if there are one or more good causes of action or counts to support it. (*Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 263 N.E.2d 103.) The final verdict returned in the instant case qualifies as a general verdict, and there were present good and sufficient causes of action to support it.

The defendant assigns as reversible error the trial court's ruling that certain testimony was inadmissible because of the parol evidence rule.

In the defendant's brief it is stated that the question of the applicability of the parol evidence rule touched off a controversy which raged throughout the entire lawsuit. An examination of the record supports this observation. In the opening statement made by counsel for the defendant the jury was informed that the evidence during the course of the trial would disclose that there were some oral side agreements between the defendant Meeker and Mr. Mackey, the individual to whom he sold the land, where the alleged acts were committed which led to this lawsuit.

Counsel for the plaintiffs called the defendant Meeker as an adverse witness under section 60 of our Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). During the examination of this witness it was established that the defendant sold land to David Mackey and that the sale was consummated by the execution of an agreement for deed dated April 9, 1976. This document provided that the purchaser would obtain possession of the farm after the completion of a public auction sale which was to be held by the defendant. The sale was completed the following day. The agreement further provided that the defendant was to retain possession of the farm house until October 1, 1976. The defendant then attempted to testify that he also retained possession of certain lots around the farm buildings as the result of a verbal agreement with the purchaser Mackey. Counsel for plaintiffs moved to exclude this testimony on the

grounds that it was not admissible under the parol evidence rule. After a conference between counsel and the court outside the presence of the jury the court ruled that the parol evidence rule was applicable and that the defendant was not permitted to testify as to any verbal side agreements he may have had with Mackey concerning the real estate.

The defendant argues for the admissibility of his testimony as to oral agreements on the grounds that it tends to prove a separate, collateral, oral contract between the parties made before or contemporaneously with the written contract. In support of this argument he cites Rule 258 of Gard, Illinois Evidence Manual (1963).

We find the comments to Rule 258 to be illuminating. As found in the manual they read in part as follows:

> "The court reports are full of decisions where unsuccessful attempts have been made to establish an independent oral contract contemporaneous with the written contract in question. It is obvious that in most cases the attempt represents an effort to find a way out of a bad bargain, usually resulting from carelessness, no doubt, in the preparation of the written instrument, or from an advantage to be gained in falling back on the oral understanding or conversations which were superseded and merged with the contract. It is only now and then that the court sees the attempt as a really legitimate one to establish an independent, collateral oral agreement which in no way affects the written instrument.
>
> Courts have exercised varying degrees of liberality in this field. The Illinois decisions may be described as conservative.
>
> The safe and realistic test for the court to apply is that of whether parties situated as were the parties to the written contract would naturally and normally include the alleged oral agreement in the written contract. If so, the fact that it was omitted indicates the intent of the parties not to have a binding agreement on that point. In other words, the scope of the collateral oral contract must be taken to be covered by the writing * * *." Gard, Illinois Evidence Manual R. 258, Comment, at 308-09 (1963).

In examining how the parties, to-wit, the defendant Meeker and the purchaser Mackey were situated at the time they executed the agreement for deed, we find that the defendant had previously advertised in several newspapers a "Closing Out Farm Auction" to be held on April 10, 1976. The advertisement announced that livestock, trucks, trailers, field machinery, a combine, insilage equipment and miscellaneous items were to be sold at public auction. The advertisement on its face proclaims that the sale was to be a closing-out sale and in fact it was, with the exception of one bull which was retained by the defendant. The record further discloses that the defendant was aware of the plaintiffs' intention and

desire to become engaged in a livestock program, and as a consequence he was to a degree instrumental in the plaintiffs leasing land from the purchaser Mackey.

On April 30, 1976, the defendant consummated a purchase of another farm in Iowa, possession to be had by him on May 15, 1976.

Taking all these facts into consideration, along with the fact that the defendant explicitly retained possession of the farmhouse until October 1, 1976, we can only conclude that situated as the parties were (defendant and Mackey) when the agreement for deed was executed, it would have been normal for the parties to incorporate in the written instrument any prior or contemporaneous agreements which they had made. That they did not do so is in our opinion the natural, normal and expected result, because the defendant's situation at the time he entered into the agreement was such that he did not need any agreement for possession of portions of the farm other than the farmhouse. He was quitting his Henderson County farming operation. This he announced and this he demonstrated by his public sale. He only needed a place to live until he was relocated. Applying the realistic test set forth in the comments to Rule 258, we can only conclude that the rule is inapplicable because there were no oral agreements prior to or contemporaneous with the written agreement between the defendant and the purchaser Mackey.

■ The defendant next argues that the parol evidence rule was not applicable because in the instant case we have a lawsuit which is not between parties to an agreement but between strangers and one of the parties to the agreement. With this contention we do not agree. The case of *Merchants Loan & Trust Co. v. Ummach* (1923), 228 Ill. App. 67, in our opinion correctly states the law of our State. The reviewing court in this case stated:

> "A great many authorities are cited where it is stated that the rule prohibiting the admission of parol evidence to vary the terms of a written contract does not apply where the suit is brought by one not a party to the contract, but is applicable only in suits between the parties to the instrument. But upon a careful examination of all the authorities, we think this statement is not accurate. Where a third person, not a party to the contract, bases his case upon it, and seeks to enforce it, the parole evidence rule applies. 4 Wigmore on Evidence, sec. 2446; 1 Elliott on Evidence, sec. 572; * * *."
> *Merchants Loan & Trust Co. v. Ummach* (1923), 228 Ill. App. 67, 77.

We believe that the law is clear in our State that the parol evidence rule applies where the controversy is between parties to the instrument or their privies. See *Walter v. Sohio Petroleum Co.* (1948), 402 Ill. 33, 83 N.E.2d 346, and *C. Lane & Co. v. Western Union Telegraph Co.* (1909), 149 Ill. App. 562.

The defendant further asserts that the plaintiffs' suit against him was one predicated on tortious action and not an action in contract and therefore the parol evidence rule was not applicable.

In considering this issue we note that defendant does not cite any authority in support of it. We doubt if there is any authority which would support such a contention. While the very basis for the application or nonapplication of the parol evidence rule is predicated upon the existence of a written agreement, we do not conclude that as a requisite for the application of the rule the relief sought by a party must be only that which has its birth in and emanates from the provisions of the agreement. Determining whether the acts of a party are tortious may well depend upon whether the terms of a contract have been violated, *i.e.*, a suit for the conversion of personal property is an action in tort. (See 35 Ill. L. & Prac. *Trover and Conversion* §9 (1958).) No useful purpose would be served in setting forth citations since it is elementary that in actions for a conversion an alleged violation of a contract is the basis for an overwhelming number of such actions. Also the tort of emotional distress frequently arises as the result of the violation of contractual provisions.

In the instant case, we agree with the defendant that the plaintiff sought damages on a number of counts, some of which alleged tortious conduct on his part. Whether his conduct was tortious depended upon whether or not he had the right pursuant to a written contract to do the complained of acts. When the agreement for deed entered the suit as evidence, it brought with it the question as to the applicability of the parol evidence rule. We cannot agree with the defendant's argument that the theory or grounds for damages alleged by a party determines the applicability of the parol evidence rule.

Lastly, in an effort to reverse the trial court's ruling that the parol evidence rule was applicable, the defendant asserts that the agreement for deed which he entered into with the purchaser Mackey is ambiguous and incomplete. The defendant attempts to support this assertion by claiming that there was a failure to adduce testimony as to who was to have the possession of the pastureland, the corn crib and barn. There is no merit to this assertion since the agreement clearly provides that the purchaser Mackey is to take possession of the entire farm as of April 9, 1976, with the exception of the dwelling house, possession of which is to be retained by the sellers until October 1, 1976. This agreement was admitted into evidence and there was no duty on the plaintiffs to adduce testimony as to the time of possession for various parcels of the farm or appurtenances located thereon. We further cannot agree that the term "farmland" is ambiguous and therefore extrinsic evidence was necessary to eliminate an ambiguity.

The defendant also assigns as error that the plaintiffs were guilty of contributory negligence.

The standard by which conduct for which the plaintiff is responsible is measured in the conduct of an ordinary prudent person under the same or similar circumstances. Whether ordinary care has been exercised or whether the plaintiff has been guilty of contributory negligence depends on the circumstances of each case. (28 Ill. L. & Prac. *Negligence* §123 (1957).) The issue of contributory negligence is ordinarily resolved by a jury; however, conduct is contributorily negligent as a matter of law only when the totality of the evidence, taken in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary conclusion could ever stand. *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.

We will set forth additional testimony and evidence as disclosed by the record for the purpose of examining the same in the light of the above-stated rules pertaining to contributory negligence.

The defendant claims the evidence shows that plaintiffs caused or contributed to their own cattle escaping from various enclosures. We do not find support for this claim in the record because evidence was produced by the plaintiffs, which remained unrebutted, that they repeatedly inspected their fences and gates in an effort to keep their livestock confined. Such evidence is indicative of an exercise of ordinary care on the part of the plaintiffs and serves to refute any claim that they were guilty of contributory negligence as a matter of law.

■■ The defendant charges the plaintiffs with multiple acts which he claims constitute contributory negligence. Those acts are the releasing by the plaintiffs of their own cattle, the failure to maintain adequate fencing, and the releasing of defendant's cattle. We do not deem it necessary to set forth in detail the testimony relating to these charges, since the record reflects that when the plaintiffs did release their cattle no further harm by commingling or breeding could occur. There is a lack of evidence to support any finding that the release of the cattle by the plaintiffs caused any of the damages which they complained of in their complaint. There can be no contributory negligence unless there is a causal connection between such negligence and the injury complained of. (*Schmidt v. Anderson* (1939), 301 Ill. App. 28, 21 N.E.2d 825; 28 Ill. L. & Prac. *Negligence* §121 (1957).) The acts with which the defendant charges the plaintiffs may well have occurred; however, there is no evidence establishing a causal connection between those acts and the damage complained of.

As we have previously stated, both plaintiffs purchased livestock from the defendant. It is uncontradicted that the defendant prior to

selling his livestock advertised that he had registration papers for a portion of the animals to be sold. It is also uncontradicted that at all times after the sale he refused to deliver any registration papers to the plaintiffs. In this appeal the defendant asserts that the plaintiffs were guilty of contributory negligence because they did not register the offspring from the purchased cattle by availing themselves of a procedure set forth in the Breeders Reference Guide published by the American Angus Association. The defendant also claims that the plaintiffs failed to mitigate damages by following the procedure set forth in the reference guide for the registration of calves born to a female served by more than one bull. Registration in such cases is to be accomplished by following a blood typing procedure.

This issue pertaining to registration by blood typing rightfully falls within the mitigation of damages question rather than the contributory negligence charges made by the defendant.

■■ Before turning our attention to the issue pertaining to damages we summarize our views concerning contributory negligence by recognizing the rule that such a question is one which is ordinarily resolved by a jury. (*Jines v. Greyhound Corp* (1965), 33 Ill. 2d 83, 210 N.E.2d 562; *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.) In the instant case the question was resolved by a jury and we find no reason why the jury's determination should be disturbed. Nor can we as a court of review based upon the evidence find that the plaintiffs were guilty of contributory negligence as a matter of law.

■■ We are not impressed with defendant's argument that the plaintiffs were under a duty to register the offspring of the cattle which had been intermingled and commingled by following the blood typing procedure set forth by the Angus Association. Even the defendant admitted that such a procedure would be impractical. Without delving into the intricacies of the procedure we merely make the observation that we harbor serious doubts if registration in the manner prescribed by the association would have been possible. Possible or not, the plaintiffs were not under any duty to follow the scientific procedure recommended by the association. The plaintiffs had a right to rely on the defendant's assurance that some registration papers would be provided for the livestock purchased by them. It appears from the evidence that the defendant did not have papers for all the livestock which he sold, but he admitted that he had some papers and that he at all times refused to turn them over to the plaintiffs. The defendant could have seasonally cured his nonconformance with the terms of his sale but elected not to do so. The plaintiffs' reliance on the defendant's promise is authorized by statute, and they should not be prejudiced in their recovery because of their reliance. (Ill. Rev. Stat. 1977, ch. 26, par. 2—607(2).) Whether the plaintiffs' failure to

try to register the offspring of the cattle constituted contributory negligence or failure to mitigate damages we hold to be of no consequence, since as we have stated the defendant is now asserting that they should have endeavored to perform an impractical if not impossible procedure.

The defendant urges this court to find that there was never a contract between the parties that certain cattle would be sold with registration papers since there was no identification of the cattle being sold that had registration papers. We find this contention to be fallacious in that the record discloses that the defendant did have papers on some of the cattle but he at all times adamantly refused to deliver those which he had to the plaintiffs. It was the defendant who advertised the existence of some registration papers and he cannot now hide behind a maze of confusion that he created. There is a total lack of good faith on the part of the defendant as far as the delivery of registration papers was concerned. The published and announced terms of the sale constituted an offer by the defendant. The purchase by the plaintiffs constituted an acceptance. A contract resulted which was violated by the defendant.

The damages incurred by the plaintiffs are not restricted only to the livestock purchased but in addition they suffered damages as to the offspring from the livestock. The plaintiffs were engaged in the cattle breeding business and the conduct of the defendant prevented them from establishing blood lines and conducting an artificial insemination program. The record is replete with testimony concerning the value of registered cattle as opposed to the value of grade or commercial cattle. Sufficient evidence was adduced upon which a jury could base an award of damages, and hence the award in the instant case should stand. See 15 Ill. L. & Prac. *Damages* §261 (1968).

The lengthy trial in the instant case received a considerable amount of news coverage in the Daily Review Atlas, a newspaper which is published in Monmouth, Illinois, and which has extensive coverage in Henderson County. The defendant assigns as reversible error the trial court's refusal to poll the jury concerning possible prejudice arising from the news articles.

Prior to examining this issue it should be noted that all jurors had been questioned during the voir dire examination as to possible prejudice resulting from similar newspaper articles. The trial judge on many occasions during the trial admonished the jurors to the effect that the case was to be decided on the evidence and not from news stories. We further deem it important that the request to poll the jurors was a post-trial motion filed after a verdict had been rendered and after the jury had been discharged.

■■ We do not agree with the defendant's contention that the trial court's

refusal to poll the jury constituted error. The trial judge specifically instructed the jury at the close of the case each day that they should avoid exposure to prejudicial information and that the case was to be decided on the evidence adduced in court. (*People v. Johnson* (1966), 35 Ill. 2d 516, 221 N.E.2d 497.) The case of *Johnson* sets forth the applicable law where the facts are such as those which are present in the instant case. It is evident that the trial court's cautionary instructions militate against the granting of a new trial.

■■ The defendant further asserts that the reporter for the Daily Review Atlas became an agent and spokesman for the plaintiffs' attorney and vicariously made statements of the plaintiffs directly available to the jurors. This assertion of the defendant does not merit consideration, for there is no evidence to support it.

The defendant also assigns as error the giving of a circumstantial evidence instruction to the jury. The grounds stated by the defendant for this assignment of error is that the circumstantial evidence adduced during the trial did not give rise to any inferences of the facts sought to be proved. In examining this contention it is necessary that we set forth some of the facts that were clearly established by the evidence, *i.e.*, the defendant resided on the farm in question until October 17, 1976; he placed his own cattle on the premises leased to the plaintiffs without plaintiffs' knowledge; the defendant did not remove his bull from the premises until August 1, 1976, even though he owned other farms in the State of Iowa; and the defendant was frequently seen on the premises leased by the plaintiffs and used feed belonging to the plaintiffs without their prior consent or knowledge.

The plaintiffs' complaint *inter alia* alleged that the defendant caused or allowed his cattle to commingle with that of the plaintiffs. The proven facts which we have set forth give rise to an inference that the commingling of the cattle was the result of the defendant's action and hence no error was committed by the giving of the circumstantial evidence instruction. A party has the right to prove his allegations by circumstantial evidence, which consists of proof of facts and circumstances from which the jury may infer other connected facts, usually and reasonably following from the proven facts and circumstances, without direct evidence thereof. 18 Ill. L. & Prac. *Evidence* §41 (1956).

The defendant acknowledges that the jury did not return a verdict against him for wilful and wanton misconduct, yet he complains that the jury should not have been instructed on matters pertaining to punitive damages. The defendant's reasoning is apparently to the effect that since there was no verdict for wilful and wanton misconduct, then *ergo* there should have been a directed verdict on the question of wilful

and wanton misconduct and punitive damages. The defendant cites no case in support of this argument and rightfully so for such is not the law. ■■■■ The defendant next argues that the plaintiffs are precluded from seeking legal relief in the form of money damages and equitable relief in the form of specific performance. More particularly it is the view of the defendant that since the plaintiffs alleged that they were entitled to equitable relief, to-wit, the delivery of the registration papers for the purchased livestock, then their claim for monetary damages resulting from the failure to deliver them should have been stricken. We disagree with the view expressed by the defendant. In determining such an issue it is necessary to examine each case in the light of its own facts and circumstances. (*Edmonds v. Gourley* (1935), 362 Ill. 147, 199 N.E. 287.) Examining the facts and circumstances in the instant case, it is evident that the plaintiffs were damaged by the failure to receive the registration papers, and the failure to have them would result in continuing damages to them and consequently they were entitled to relief in the form of a judgment ordering specific performance. Such a judgment order might well serve to abate continuing damages; however, it would not compensate the plaintiffs for past damages and therefore they were entitled to seek a monetary recovery. The plaintiffs had the right to plead and introduce proof upon all theories of recovery which they desired. They further had the right to have the jury clearly and fairly instructed upon each theory which was supported by the evidence. *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500.

Lastly the defendant argues that even though one error by the trial court standing alone may not require a new trial, the accumulative effect of a number of errors when considered in their totality would require reversal. We quarrel not with this argument of the defendant, for we so held in *Clarquist v. Kirschenman* (1977), 55 Ill. App. 3d 76, 370 N.E.2d 840. In the case of *Clarquist* we found that a number of errors had been committed during the trial of the case. In the instant case we have not determined that there was a multiplicity of errors, and therefore the accumulative error rule is not applicable.

For the reasons set forth the judgment of the circuit court of Henderson County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.