2023 IL App (4th) 220687

NO. 4-22-0687

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LORI L. HASSARD, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macoupin County |
| DS RETAIL, LLC, d/b/a Dollar General, | ) | No. 19L13 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | April G. Troemper, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice DeArmond and Justice Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Lori L. Hassard, appeals the order of the circuit court of Macoupin County

denying her motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new

trial. In this personal injury action, the jury initially returned a verdict finding plaintiff more than

50% at fault but also awarding her damages. Upon further deliberation, the jury returned a verdict

in plaintiff's favor, without finding any contributory negligence, but for less than the amount of

her medical bills. Plaintiff contends that the jury's confusion resulted in inconsistent verdicts. For

the following reasons, we reverse and remand for a new trial.

¶ 2                                I. BACKGROUND

¶ 3        On April 11, 2019, plaintiff filed a one-count complaint against defendant, DS

Retail, LLC, d/b/a Dollar General, arising from injuries she allegedly sustained from a fall in

defendant's store in Staunton. Defendant claimed, among other affirmative defenses, that plaintiff was contributorily negligent. The matter proceeded to a two-day jury trial beginning on May 18, 2022.

¶ 4                                    A. The Evidence at Trial

¶ 5           Plaintiff was 56 years old and employed 15 hours per week as a food server at a local school. Plaintiff's job entailed filling milk coolers and lifting heavy pans.

¶ 6           Plaintiff testified she went to Dollar General on July 8, 2018, to buy dog treats. She was wearing new flip-flops. Plaintiff testified she entered the aisle containing dog food and "went down." She did not know then what caused her to fall. Within the next couple days, when plaintiff went back to the store, she observed a raised "lip" in the floor where she fell. Plaintiff described this "lip" as approximately the height of her flip-flops or a "little bit higher." Plaintiff testified that her shoe caught on this lip, causing her to fall.

¶ 7           Plaintiff testified she awoke to "excruciating" pain in her left shoulder the morning after her fall. On August 14, 2018, plaintiff saw Dr. Paulo Bicalho, an orthopedic surgeon. He prescribed an injection and physical therapy. Plaintiff testified she improved with physical therapy to the point she wanted to go back to work. Plaintiff's last physical therapy visit was on October 9, 2018. However, the next day, on the advice of her attorney, plaintiff saw Dr. Corey G. Solman Jr., another orthopedic surgeon. Dr. Solman diagnosed a torn rotator cuff and performed surgery on plaintiff's left shoulder. Plaintiff testified that the surgery gave her a "good result." After surgery, plaintiff still had difficulty lifting heavy objects at work, mowing her four acres of grass at home, throwing wet laundry into the dryer, and playing sports. Plaintiff's medical bills totaled $108,868. On cross-examination, plaintiff testified that after she was feeling better from the

physical therapy, but before she saw Dr. Solman, she reinjured her shoulder lifting heavy laundry. Plaintiff denied knowing that Dr. Bicalho's records reflected a diagnosis of "tendinitis."

¶ 8          Nick Hassard, plaintiff's husband, testified he was one or two steps behind plaintiff as they shopped at Dollar General on July 8, 2018. When plaintiff rounded the corner into the pet food aisle, she "went down." Hassard estimated that the defect in the floor where plaintiff "hit" was about a half-inch high. Hassard recalled an incident when plaintiff was doing laundry sometime after her fall when she yelled in pain because her left shoulder hurt.

¶ 9          Alexandra Herron testified she was a cashier at the Staunton Dollar General store on July 8, 2018. Herron observed a "few scrapes" on plaintiff's elbow and knee when plaintiff reported she had fallen. Herron reported the incident to her manager, Joseph "Joey" Katzmarek. Herron testified she knew there was a "crack" about a half-inch high in the floor in the aisle where plaintiff said she fell. Herron had complained to Katzmarek that dirt went into that crack when she swept the floor. The store did not warn customers about the crack or cover it. Herron testified she was not aware of anyone else falling in that location.

¶ 10          Katzmarek testified he was the "lead sales associate" at the Staunton Dollar General on July 8, 2018. According to Katzmarek, there was about a 1/8-inch "deviation" in the floor of the pet food aisle at the Staunton Dollar General on July 8, 2018. Katzmarek testified that he noticed this deviation on his first day of work in 2015. Katzmarek said he did not think of this deviation as being a "hazard." According to Katzmarek, there was never any sign or warning to customers about the deviation in the floor. Katzmarek recalled seeing plaintiff after she fell, and he remembered she had a scraped knee.

¶ 11          Tiffany Dannaman testified she was the Dollar General manager in Staunton on July 8, 2018, although she was not present when plaintiff fell. Dannaman described the raised area

in the floor in the pet food aisle as "minimum." She testified she was aware of it only because it was noticeable when they pushed carts over it. Dannaman was aware of another, larger floor defect that was covered with orange duct tape to prevent people from tripping. According to Dannaman, she did not cover the defect in the pet aisle floor because she did not consider it a tripping hazard. Dannaman testified that no one besides plaintiff had fallen in that area.

¶ 12        Dr. Solman, a board-certified orthopedic surgeon, testified via video deposition, as follows. (The record contains the transcript of Dr. Solman's deposition but not the video.) A physician's assistant to Dr. Solman first saw plaintiff on October 10, 2018. Prior to seeing Dr. Solman's assistant, plaintiff received a steroid injection in her left shoulder, was prescribed oral anti-inflammatory medication, and had 12 physical therapy visits. Dr. Solman reviewed a magnetic resonance imaging scan (MRI) that disclosed a rotator cuff tear of a tendon in her left shoulder. Dr. Solman also reviewed an X-ray of plaintiff's left shoulder, which showed no arthritis of the shoulder joint or prior fractures. Dr. Solman did not find a degenerative condition. Plaintiff had "some" arthritis in the acromioclavicular joint, but not "much" arthritis in the glenohumeral joint. Dr. Solman performed arthroscopic surgery on October 30, 2018, followed by physical therapy. He saw plaintiff for three postoperative visits, which indicated plaintiff was "doing fine and had a good result." Plaintiff had full range of motion and no pain. The doctor released plaintiff to go back to work without restrictions on January 7, 2019. Dr. Solman testified, to a reasonable degree of medical certainty, to the following: (1) plaintiff's condition of ill-being was caused by her fall at Dollar General, (2) all of plaintiff's treatment to her shoulder following her fall was reasonable and necessary, and (3) Dr. Solman's and the surgery center's bills were directly related to the injuries plaintiff sustained in her fall at Dollar General.

¶ 13 After plaintiff rested, defendant moved for a directed verdict, which the trial court denied. At the beginning of defendant's case, defense counsel read into the record the following from Dr. Bicalho's records: "MRI shows tendinitis to the rotator cuff specifically as to her spinitis [*sic*]. Recommend injection and physical therapy and follow up in three months." Defendant's attorney also read into the record the following from plaintiff's physical therapy records: "[O]n October 9th, 2018: 'Patient states that she has a pain of 2 to 3 [out of 10] at times.' "

¶ 14 The report of proceedings reflects that defendant's expert orthopedic surgeon, Dr. Richard Clinton Lehman, testified via video deposition, as follows. (The record contains the transcript of Dr. Lehman's video deposition but not the video.) Dr. Lehman examined plaintiff on April 8, 2021. Dr. Lehman also reviewed plaintiff's medical and physical therapy records. In Dr. Lehman's review of plaintiff's MRI, which was taken 10 days after her fall at Dollar General, he noted "significant degenerative changes." Dr. Lehman testified that plaintiff suffered from tendinosis, mild osteoarthritis, and bursal fraying. He explained that tendinosis is "degeneration in the rotator cuff." Dr. Lehman opined that this condition was consistent with plaintiff's age. Dr. Lehman also explained that bursa is an "inflammatory response to impingement," which takes "a while" to occur. Dr. Lehman testified that he observed no "acute" changes on the MRI, meaning there was nothing to suggest recent trauma. Dr. Lehman testified that plaintiff did not suffer a rotator cuff tear. The doctor opined that plaintiff suffered a "contusion" or "soft-tissue strain" in her fall that did not appear on the MRI and which would have resolved on its own without surgery. The doctor testified that plaintiff was doing well and improving with physical therapy. Dr. Lehman also opined that the fall did not aggravate her shoulder arthritis. On cross-examination, Dr. Lehman testified that plaintiff's fall could not be correlated to her symptoms.

¶ 15 After Dr. Lehman's testimony, defendant rested, and plaintiff presented no rebuttal. Defendant renewed its motion for a directed finding, which the trial court denied.

¶ 16 B. The Jury's Deliberation and Verdicts

¶ 17 The report of proceedings reflects the jury instructions and verdict forms as the trial court read them to the jury in open court. However, the common law record contains neither the instructions, verdict forms, jury questions, nor signed verdicts.

¶ 18 According to the report of proceedings, as part of instructing the jury, the trial court read verdict form A to the jury as follows:

> "We the jury find for the plaintiff, Lori L. Hassard and against the defendant DG Retail, LLC, doing business as Dollar General. We assess the damages in the sum of [blank] itemized as follows [reasonable expense of necessary medical care, treatment, and services rendered; pain and suffering experienced as a result of the injuries and reasonably certain to be experienced in the future; and loss of a normal life experienced and reasonably certain to be experienced in the future]."

¶ 19 The trial court read verdict form B as follows:

> "We the jury find for Lori L. Hassard and against DG Retail, LLC doing business as Dollar General, and further find the following. First, without taking into consideration the question of reduction of damages due to the negligence of Lori L. Hassard, we find [the] total amount of damages suffered by Lori L. Hassard as a proximate result of the occurrence in question is [blank]. Second, assuming that 100% represents the total combined negligence of all persons whose negligence proximately

contributed to the plaintiff's injuries including Lori Hassard and DG Retail, LLC doing business as Dollar General, we find that the percentage of such negligence attributable solely to Lori L. Hassard is [blank percentage]. Third, after reducing the total damages sustained by Lori L. Hassard by the percentage of negligence attributable solely to Lori L. Hassard, we assess Lori L. Hassard's recoverable damages in the sum of [blank] itemized as follows: the reasonable expense of necessary medical care, treatment and services received, the pain and suffering experienced as a result of the injuries and reasonably certain to be experienced in the future[,] [and] the loss of a normal life experienced and reasonably certain to be experienced in the future. Plaintiff's total damages [blank]."

¶ 20     The trial court read verdict form C as follows:

"We the jury find for DG Retail, LLC doing business as Dollar General and against Lori L. Hassard."

¶ 21     The record does not reflect what time the jury retired to deliberate. However, at 6 p.m., the jury sent out a note. The trial court read the note into the record: "In the video of Dr. Solman's testimony, insurance was discussed. How much did the insurance pay." The court advised the jury that it was to consider only the evidence presented at trial. Then, at 7:15 p.m., the bailiff advised the court that the jury had reached a verdict. According to the report of proceedings, the jury returned verdict form B, which the court read into the record and we summarize. The jury found in plaintiff's favor in the amount of $110,000. The jury then found plaintiff 80% negligent and reduced her award to $22,000. The jury itemized the damages as follows: (1) reasonable expense of necessary medical care, treatment, and services received: $20,000; (2) pain and

suffering and future pain and suffering: $2000; and (3) loss of a normal life and future loss of a normal life: $0. Neither party polled the jury, and the court discharged the jurors. The court told the jurors they could speak with the attorneys if they chose to, or they could return to their homes. The court then entered judgment on the verdict in the amount of $22,000.

¶ 22 After the jurors were discharged, the trial court noted to counsel that the verdict was "inconsistent" because the jury found plaintiff 80% contributorily negligent but awarded her damages. The court then *sua sponte* stated its intention to reassemble the jurors and question them about their verdict: "I think we need to bring them back in and ask them if they find that [plaintiff] was more than 50% [negligent]." Neither plaintiff's counsel nor defense counsel objected to the court inquiring into the jury's deliberations.

¶ 23 With the jury reassembled, yet unsworn, the trial court addressed the foreperson: "I do need to ask for clarification, so Madame Forewoman, *** [d]id the jury find [plaintiff] 80% contributor[ily] negligent or 20%?" The foreperson confirmed that the jury found plaintiff 80% contributorily negligent. The court then stated: "You found [plaintiff] 80% [negligent], so based on that, then the verdict should have been Verdict Form C and no damages would be awarded if [plaintiff] was more than 50% negligent. So I just wanted to clarify that." When the court informed the jury that 80% contributory negligence would result in a verdict in defendant's favor, the foreperson stated: "We most unfortunately did not understand the form. *** I think we need to go back and discuss it." The court responded, "That's okay." Then, the court inquired, presumably of counsel, "So everyone is fine with that?" Plaintiff's counsel stated: "Yes—I don't know—the juror started to ask a question. I don't know how the court wants to handle it." The court addressed the jury: "Well, I would suggest you all go back in there and write your question on a piece of paper and we can talk about it and see if I can answer that, okay."

¶ 24    At 7:34 p.m., the jury sent out a note. The trial court read this note into the record: "Please clarify Form B." With the agreement of counsel for both parties, the court furnished the jury with one of the instructions it had previously given. The report of proceedings does not show which instruction the court furnished, and that instruction is not contained in the common law record. Presumably, the court furnished an issues instruction dealing with contributory negligence, because the court stated: "[T]his [instruction] talks about the less than or more than 50 percent."

¶ 25    At 7:43 p.m., the jury sent out another note. The trial court read the note into the record: "Since we signed Form B with slight confusion, are we able to sign Form A, or should we modify Form B?" With counsels' agreement, the court informed the jury: "Please use whichever form truly represents your unanimous decision." At 7:52 p.m., the jury returned verdict form A. The court read the verdict into the record as follows:

> "We the jury find for Plaintiff Lori L. Hassard and against the Defendant DG Retail, LLC doing business as Dollar General. We assess damages in the sum of $22,000 itemized as follows: the reasonable expense of necessary medical care, treatment, and services received $20,000. The pain and suffering experienced as a result of the injuries and reasonably certain to be experienced in the future, $2000. The loss of the normal life experienced and reasonably certain to be experienced in the future, zero. Total damages to the plaintiff, $22,000. And it is signed by all 12 jurors."

Neither party polled the jury, and the court thanked the jurors for "going back and doing that." The court did not orally enter judgment on verdict form A. The docket entry indicates that plaintiff's attorney was to prepare a judgment order with the jury's findings within seven days. However, the common law record shows that no written judgment order was entered.

¶ 26                    C. The Trial Court's Ruling on Plaintiff's Posttrial Motion

¶ 27          Within 30 days, plaintiff filed a motion for JNOV or for a new trial, arguing that the jury (1) considered matters outside the record when it asked whether insurance paid plaintiff's medical bills and (2) returned inconsistent verdicts. In denying the posttrial motion, the trial court ruled that the insurance issue was "put to rest" when both sides agreed to answer the jury's question by saying that the jury was to consider only the evidence it had received. Regarding the issue of inconsistent verdicts, the court ruled that the evidence supported the jury's final verdict. The court noted that plaintiff testified her shoulder pain was improving when she reinjured the shoulder doing laundry. The court concluded the jury could reasonably have found that the medical bills following the reinjury were not related to plaintiff's fall.

¶ 28          This timely appeal followed.

¶ 29                              II. ANALYSIS

¶ 30          Plaintiff contends she is entitled to either a JNOV or a new trial based upon the following: (1) the jury's damages award assumed plaintiff's medical bills were paid by insurance, (2) the jury rendered inconsistent verdicts, (3) the final verdict was the product of the jurors' "unintended misconduct" and represents a compromise verdict, and (4) the trial court should have used an *additur* to compensate plaintiff fully for her medical bills.

¶ 31          A JNOV should be granted where the "evidence and inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favor[ ] the movant that no contrary verdict based on that evidence could ever stand." (Internal quotation marks omitted.) *Hall v. Cipolla*, 2018 IL App (4th) 170664, ¶ 100. In ruling on a motion for a JNOV, the trial court does not weigh the evidence or determine the credibility of the witnesses. *Hamilton v. Hastings*, 2014 IL App (4th) 131021, ¶ 22. Rather, the court considers only the evidence and any inferences

- 10 -

therefrom in the light most favorable to the opponent of the motion. *Hamilton*, 2014 IL App (4th) 131021, ¶ 22. We review *de novo* the trial court's ruling on a motion for a JNOV. *Hall*, 2018 IL App (4th) 170664, ¶ 100.

¶ 32          By contrast, when a party seeks a new trial, the court weighs the evidence and can set aside the verdict and order a new trial where the verdict is "contrary to the manifest weight of the evidence." (Internal quotation marks omitted.) *Hamilton*, 2014 IL App (4th) 131021, ¶ 26. A verdict is against the manifest weight of the evidence where the opposite conclusion is "clearly evident" or the jury's findings are "unreasonable, arbitrary and not based upon any of the evidence." (Internal quotation marks omitted.) *Hamilton*, 2014 IL App (4th) 131021, ¶ 26. We will not reverse the trial court's ruling on a motion for a new trial unless the court abused its discretion. *Hamilton*, 2014 IL App (4th) 131021, ¶ 26. In deciding whether the court abused its discretion, we consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Hamilton*, 2014 IL App (4th) 131021, ¶ 26. Although plaintiff seems to argue both that she is entitled to a JNOV or a new trial, the only relief she requests in her prayer for relief is a new trial.

¶ 33          As a preliminary matter, we are compelled to comment on the state of the record. The appellant carries the burden to present a sufficiently complete record so we can determine whether a claimed error occurred. *Webster v. Hartman*, 309 Ill. App. 3d 459, 460 (1999). Here, the appeal rests on the issue of the jury's verdicts and the instructions associated with those verdicts. Both parties argue the applicability of specific pattern jury instructions. Yet, plaintiff failed to include in the record the actual instructions tendered and given, verdict forms, verdicts, and notes the jury sent while deliberating. Where a record is insufficient, the appellant risks dismissal of the appeal. See *Flemming v. Burks*, 63 Ill. App. 2d 300, 303 (1965). We choose not

to take such drastic measures in this case because defendant does not dispute what occurred concerning the reassembling of the jury after it was discharged and the return of two verdicts. However, we will resolve any doubts arising from an incomplete record against the appellant. *Webster*, 309 Ill. App. 3d at 460.

¶ 34 Because we order a new trial based on the jury's return of verdict form B, which was inherently self-contradictory, as posited by plaintiff, we do not address plaintiff's other arguments. However, we are constrained to note that plaintiff does not support her insurance argument with any citations of authorities, except for one case on the standard of review, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Similarly, plaintiff fails to make a cohesive argument with citations to authorities supporting her contention that the jury engaged in misconduct resulting in a compromise verdict with regard to verdict form A. Reviewing courts are not depositories where litigants may dump the burdens of research and argument. *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 28. We are entitled to have the issues clearly defined and a cohesive argument presented. *Alms*, 2022 IL App (4th) 220976, ¶ 28. Additionally, plaintiff failed to include the pages of the record relied upon in the argument section of her brief in violation of Rule 341(h)(7). (Defendant's brief suffers from the same defect as well.) Our supreme court's rules are not aspirational but have the force of law. *People v. Young*, 387 Ill. App. 3d 1126, 1127 (2009).

¶ 35 We turn now to the issue of inconsistent verdicts. In the same action, where verdicts are returned that are legally inconsistent with each other, the verdicts should be set aside, and a new trial should be granted. *Redmond v. Socha*, 216 Ill. 2d 622, 641 (2005). If the same jury, on the same facts and circumstances, reaches two different factual conclusions, such verdicts will not support a valid judgment unless they are reconcilable under an applicable rule of law. *Redmond*,

216 Ill. 2d at 642. There are two types of legally inconsistent verdicts. *Redmond*, 216 Ill. 2d at 643. The first type consists of those involving a single claim in which the single verdict is internally inconsistent or inherently self-contradictory. *Redmond*, 216 Ill. 2d at 643. The second type consists of those in which multiple claims are made by one or more parties and a verdict as to one claim is inconsistent with a verdict as to another claim. *Redmond*, 216 Ill. 2d at 643. In both types of cases, the court will exercise "all reasonable presumptions" in favor of the verdict or verdicts. *Redmond*, 216 Ill. 2d at 643. The court will not find the verdicts to be legally inconsistent unless they are "absolutely" irreconcilable. *Redmond*, 216 Ill. 2d at 643. Verdicts are not "irreconcilably inconsistent" if they are supported by "any reasonable hypothesis." *Redmond*, 216 Ill. 2d at 644. We review *de novo* a trial court's order granting or denying a new trial based on a claim of legally inconsistent verdicts. *Redmond*, 216 Ill. 2d at 642. However, whether a new trial is justified on the grounds that the verdict was against the manifest weight of the evidence is reviewed for an abuse of discretion. *Rodriguez v. Northeast Illinois Regional Commuter R.R. Corp.*, 2012 IL App (1st) 102953, ¶ 48.

¶ 36        As noted, the jury's first verdict (verdict form B) found plaintiff 80% at fault but nevertheless awarded her damages, and the jury's second verdict (verdict form A) found in plaintiff's favor and against defendant without finding any contributory negligence on plaintiff's part. Plaintiff argues the verdicts were inconsistent with each other and verdict form B was internally inconsistent. Plaintiff cites authority for the first argument, but she makes a conclusory argument unsupported by any authority for her contention that verdict form B was internally inconsistent. Plaintiff's entire argument in that vein is as follows:

"Initially, [the jury] found the plaintiff 80% at fault yet awarded her money; an outcome the verdict form plainly disallows. This decision is illogical and

- 13 -

inconsistent with the jury instruction which clearly stated that plaintiff would receive nothing if her fault was greater than 50 %."

¶ 37 "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." (Internal quotation marks omitted.) *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 43. "A reviewing court is entitled to have the issues clearly defined with pertinent authority cited ***." (Internal quotation marks omitted.) *Elder v. Bryant*, 324 Ill. App. 3d 526, 533 (2001). Allegations raised without citation to supporting authority are deficient and warrant forfeiture. *Elder*, 324 Ill. App. 3d at 533. Accordingly, we deem plaintiff's argument forfeited insofar as she contends that verdict form B was internally inconsistent. Nevertheless, forfeiture of an issue is a limitation on the parties but not on the reviewing court. *Curtis v. Lofy*, 394 Ill. App. 3d 170, 188 (2009). We can overlook forfeiture to obtain a just result or to maintain a uniform and sound body of precedent. *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22. We choose to overlook forfeiture because, based on sound precedent, we conclude the jury's second verdict was invalid. Therefore, if the jury's first verdict (verdict form B) was legally inconsistent, affirming that judgment would produce an unjust result.

¶ 38 Defendant attempts to reconcile the two verdicts factually by arguing that verdict form B—in which the jury assessed plaintiff's contributory negligence at 80%—correctly found in defendant's favor as to liability, and verdict form A—where the jury awarded plaintiff $22,000 without assessing any contributory negligence on her part—correctly awarded damages. Only by bifurcating the analysis can defendant argue that both verdicts were supported by the evidence.

¶ 39 However, the jury reached two different factual conclusions, that is, that plaintiff was both guilty and not guilty of contributory negligence. *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311 (1984), is instructive. In *Wottowa*, the jury found, as to count I of the plaintiff's

complaint, that the guaranty signed by the defendants as corporate officers was a corporate obligation. *Wottowa*, 104 Ill. 2d at 316. The jury also found, as to count II of the complaint, that the defendants were personally liable for fraud. *Wottowa*, 104 Ill. 2d at 316. The court held that the jury's finding under count I that the guaranty was not a personal obligation was "irreconcilably inconsistent" with its finding as to count II that the defendants were personally liable. *Wottowa*, 104 Ill. 2d at 316. Pertinent to our case, Illinois follows a partial comparative negligence scheme barring a claimant from recovery if his or her fault is more than 50%. *Acuity Insurance Co.. v. Department of Transportation*, 64 Ill. Ct. Cl. 277, 280 (2012). Thus, finding plaintiff 80% contributorily negligent was irreconcilably inconsistent with awarding her damages.

¶ 40     When the trial court spotted the inconsistency in verdict form B, the court's solution was *sua sponte* to alert counsel to that fact and to reassemble the jury after it had been discharged and direct it to redeliberate. The outcome of this appeal depends on the propriety of reassembling the discharged jury, although neither party addresses this issue.

¶ 41     A trial court can properly direct a jury to reconsider inconsistent verdicts *prior to recording the verdict and discharging the jury*. *Roth v. Meeker*, 72 Ill. App. 3d 66, 72 (1979). In *Roth*, after the jury deliberated for approximately four hours, it asked the court for instructions concerning punitive damages. *Roth*, 72 Ill. App. 3d at 70. The court gave the jury a written instruction, and the jury continued to deliberate. *Roth*, 72 Ill. App. 3d at 70. After deliberating for approximately seven hours, the jury returned a verdict finding the defendant guilty of willful and wanton misconduct on three counts of the plaintiffs' complaint. *Roth*, 72 Ill. App. 3d at 71. Before the jury could be polled, however, the court advised the jury that those three counts of the complaint would not support a punitive-damage award. *Roth*, 72 Ill. App. 3d at 71. The court directed the jury to " 'reconsider' " and " 'adjust' " its verdict if it awarded punitive damages on

those counts. *Roth*, 72 Ill. App. 3d at 71-72. After deliberating again for a short time, the jury returned a second verdict in the plaintiffs' favor but awarded no punitive damages. *Roth*, 72 Ill. App. 3d at 72. On appeal, the court rejected the defendant's argument that the jury's first verdict became final upon his request to poll the jury. *Roth*, 72 Ill. App. 3d at 73. The court noted that a "jury's finding does not become a verdict until it is accepted by the court and entered of record." *Roth*, 72 Ill. App. 3d at 73. "[U]ntil the jury is discharged[,] the finding is within their control and may be changed by them." *Roth*, 72 Ill. App. 3d at 73. In *Buccholz v. Hartzell*, 130 Ill. App. 2d 927, 931 (1971), the court held that it is proper for the trial court to direct the jury, before the verdict is recorded, to redeliberate their verdict.

¶ 42        However, after the trial court receives the verdict and the jury is allowed to separate, the jury's control over the verdict ends. *Warfield v. Patterson*, 135 Ill. App. 307, 310 (1907). Although *Warfield* is not precedential authority (*Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996) (stating appellate court decisions issued prior to 1935 are not binding authority); *North Shore Community Bank & Trust Co.. v. Kollar*, 304 Ill. App. 3d 838, 844 (1999) (stating although appellate court decisions issued before 1935 are not binding authority, we view them as persuasive authority)), in the absence of any contrary authority, it indicates that Illinois early on prohibited reassembling the jury for further deliberation after it was discharged. "The general rule is, that, if the jury has been allowed to finally separate, the jurors cannot be re-assembled, and their verdict [cannot be] corrected by them." *Ayer v. City of Chicago*, 149 Ill. 262, 269 (1894).

¶ 43        *People v. Davis*, 105 Ill. App. 3d 549 (1982), is instructive. In *Davis*, a death-penalty case, the jury found the defendant guilty of murder. *Davis*, 105 Ill. App. 3d at 554. The next morning, when the jury, which was not sequestered, returned for the sentencing phase,

the defendant moved for a mistrial based on the jury's request of the bailiff the previous evening for a partial transcript. *Davis*, 105 Ill. App. 3d at 554-55. The bailiff never communicated the jury's request to the trial court but essentially told the jury the transcript was not available. *Davis*, 105 Ill. App. 3d at 555. The judge set aside the verdict, gave the jury the transcript it requested, and allowed the jury to redeliberate the question of guilt. *Davis*, 105 Ill. App. 3d at 555. This court noted that although the jury was capable of being reassembled shortly after it rendered its guilty verdict, that was immaterial. We held:

> "The governing legal proposition is that once a verdict has been rendered, accepted by the court, and judgment entered thereon, and the jury has separated, the court has lost control of the verdict, and the only remedies are either a mistrial or some variety of post-trial relief, such as judgment *n.o.v.* or new trial." *Davis*, 105 Ill. App. 3d at 556.

Accordingly, we held that "sending the jury to its room" to deliberate a second time was error. (Internal quotation marks omitted.) *Davis*, 105 Ill. App. 3d at 557. We stated unequivocally that "[o]nce judgment has been entered and the jury has separated, the trial court is foreclosed from any action regarding the verdict, except mistrial or post-trial relief." *Davis*, 105 Ill. App. 3d at 557.

¶ 44    Based on the above, we determine that the second verdict (verdict form A) was invalid. We look to the court's reasoning in *Warfield* for guidance. In *Warfield*, the jury returned a verdict in the plaintiff's favor, assessed damages, and said the damages were due on a date certain. *Warfield*, 135 Ill. App. at 308. The jury was then discharged. *Warfield*, 135 Ill. App. at 308. The next day, counsel for both parties raised a question as to the meaning of the verdict. *Warfield*, 135 Ill. App. at 308. The court recalled the jury and instructed it to redeliberate whether it intended to find the damages as specified in its first verdict. *Warfield*, 135 Ill. App. at 308. The

jury then returned a new verdict assessing different damages. *Warfield*, 135 Ill. App. at 308. The appellate court held that the second verdict "had no validity" because after the jury separated following its first verdict, its control over the first verdict ended. *Warfield*, 135 Ill. App. at 311. The court stated that the jury had "no authority afterward to return a new or amended verdict." *Warfield*, 135 Ill. App. at 310. In our case, the trial court discharged the jury, allowing it to separate, and then entered judgment on its verdict (verdict form B). Consequently, we hold that the trial court erred in reassembling the jury for further deliberation. It follows that the jury was without authority to return the second verdict (verdict form A).

¶ 45    Although neither party raises the correlative issue of the trial court's colloquy with the jury foreperson concerning the jury's deliberations, wherein the court asked the jury foreperson for "clarification" of the verdict, we are bound to remind trial courts that "[i]t is a basic principle of our justice system that *jury deliberations shall remain private and secret*." (Emphasis added.) *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17. "The primary purpose of this honored rule is to protect the jurors from improper influence." *Johnson*, 2015 IL App (3d) 130610, ¶ 17. Here— shockingly with both parties' acquiescence—the trial court not only inquired into the jury's deliberations but then "clarified" that those deliberations led it to return the wrong verdict.

¶ 46    The issue becomes the proper remedy. Again, we look to *Warfield* for guidance. In *Warfield*, the court remanded for a new trial because the judgment on the second verdict was erroneous. *Warfield*, 135 Ill. App. at 310. Here, because the trial court did not enter judgment on the second verdict (verdict form A), a new trial is warranted only if the judgment entered on verdict form B cannot be upheld. Plaintiff filed a timely posttrial motion in which she argued, *inter alia*, that verdict form B was legally inconsistent. We agree. It was inherently self-contradictory for the jury to award plaintiff money damages while finding plaintiff 80% at fault. Where a verdict is

legally inconsistent, it must be set aside and a new trial must be granted. *Redmond*, 216 Ill. 2d at 642. Accordingly, we reverse the trial court's judgment and remand for a new trial.

¶ 47                                    III. CONCLUSION

¶ 48        For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

¶ 49        Reversed and remanded.

*Hassard v. DS Retail, LLC*, 2023 IL App (4th) 220687

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Macoupin County, No. 19-L-13; the Hon. April G. Troemper, Judge, presiding. |
| **Attorneys for Appellant:** | D. Keith Short, of Keith Short and Associates, P.C., of Alton, for appellant. |
| **Attorneys for Appellee:** | James E. Godfrey Jr. and Kerry B. Banahan, of Evans & Dixon LLC, of St. Louis, Missouri, for appellee. |