2026 IL App (1st) 251733-U

FIRST DIVISION
June 15, 2026

No. 1-25-1733

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| TANYA M. ZAWADZKI and PATRICK M. GARCIA, ) | |
| ) | Appeal from the |
| Plaintiffs-Appellants, ) | Circuit Court of |
| ) | Cook County. |
| v. ) | |
| ) | No. 21 L 001376 |
| JARAH J. BURGIN, JR., Individually and as Agent of ) | |
| Fix It 1st, Inc., a Corporation; and FIX IT 1ST, INC., a ) | Honorable |
| Corporation, ) | Bridget A. Mitchell, |
| ) | Judge Presiding. |
| Defendants-Appellees. ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The circuit court's order denying the plaintiffs' motion for a new trial is affirmed. The circuit court did not abuse its discretion when it found that the jury's verdict was not against the manifest weight of the evidence, and the plaintiffs had waived all claims of instructional error by not objecting to the jury instructions at trial.

¶ 2    This cause of action stems from a complaint filed by the plaintiffs-appellants, Tanya M. Zawadzki and Patrick M. Garcia, against the defendants-appellees, Jarah J. Burgin, Jr.,

individually, and as an employee of Fix It 1st, Inc. (hereinafter Fix It), seeking to recover damages allegedly sustained after a van, owned by Fix It, and driven by Burgin as part of his employment, negligently rear-ended their vehicle. After a jury trial, the jury returned a verdict in favor of the defendants, and the circuit court entered judgment in their favor and against the plaintiffs. The plaintiffs filed a motion for a new trial which was denied. The plaintiffs now appeal from the circuit court's denial of that motion, arguing that: (1) the jury's verdict was against the manifest weight of the evidence; (2) the jury ignored the tendered jury instructions; and (3) several erroneously tendered jury instructions prejudiced the outcome of their trial. For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      At the outset, we note that the record before us is incomplete and does not contain a report of the proceedings below, or any acceptable substitute—such as a bystanders' report or an agreed statement of facts—as authorized under Illinois Supreme Court Rule 323 (eff. Dec. 13, 2005). The common law record, which includes some of the parties' pleadings, however, contains excerpts of transcripts of portions of the pretrial proceedings and the jury trial, attached as exhibits. From these excerpts and the trial court's orders contained in the common law record, we have been able to glean the following pertinent facts and procedural history.

¶ 5      At approximately 6 p.m. on February 7, 2019, the plaintiffs, Zawadzki and Garica, and the defendant, Burgin, were involved in a two-vehicle collision on Cicero Avenue near 39th Street. On February 5, 2021, the plaintiffs filed a complaint alleging that Burgin negligently drove his van into their vehicle and that Fix It was vicariously liable for Burgin's conduct because, at the time of the accident, he was operating the van on its behalf. The defendants filed answers admitting that at the time of the collision, Burgin was working for Fix It but denying any negligence. The

defendants also filed affirmative defenses against Zawadzki for comparative fault, and a counterclaim for contribution against Zawadzki for injuries to Garcia.

¶ 6    On the eve of trial, the parties reached a settlement as to the defendants' counterclaim against Zawadzki, and on June 6, 2024, the circuit court entered an order dismissing the counterclaim with prejudice.

¶ 7    The parties proceeded with a jury trial. The following evidence was undisputed. On the night of the accident, the weather was cold, rainy and snowy, it was dark out, and the road was wet. At the time of the collision, Zawadzki was driving her 1999 Ford Expedition SUV northbound on Cicero Avenue and her partner, Garcia, was in the front-passenger seat, while their five-year-old daughter sat in the back. While driving Fix It's van as part of his job, Burgin collided with Zawadzki's SUV. The points of impact were the front of Fix It's van and the back end of Zawadzki's SUV.

¶ 8    At trial, the parties disputed liability and damages. With respect to the incident, Zawadzki and Garcia testified that Zawadzki was driving the SUV downhill and northbound on Cicero Avenue. The SUV was in the center lane of the two northbound lanes throughout the incident and Zawadzki never changed from the left lane to the center lane. Zawadzki was driving at a speed of 10 mph in the 30 or 40 mph zone because the weather was poor and she was approaching the train tracks. About half-way down the block, the SUV was struck "hard" from behind and pushed forward about two car lengths. Neither Zawadzki nor Garcia saw the van that hit them or had any inkling that a collision was about to happen until the impact.

¶ 9    In contrast, Burgin testified that prior to the accident, he was driving within the speed limit in the center lane of Cicero Avenue heading northbound. There were no cars immediately in front of him. The right lane was stopping and moving slowly. About 100 to 200 feet before the train

tracks, Zawadzki's SUV suddenly cut over from the right lane into his lane. Burgin pressed on his break as hard as he could and braced for impact, but his van slid because of the slippery road and hit the SUV with "medium" force. Burgin testified that there were no other evasive maneuvers available to him because there were cars on both sides of his van. The impact of the collision pushed the SUV across the train tracks and left Burgin's van in the middle of the tracks. Burgin acknowledged that the van was inoperable after the crash and had to be towed, but that the SUV appeared to have sustained little damage.

¶ 10    With respect to their injuries, Zawadzki and Garcia testified that although they were wearing their seatbelts, upon impact, they went "forwards and backwards very hard." Neither of their airbags deployed, and Zawadzki's chest hit the steering wheel, while Garcia braced for impact with his hands. Garcia immediately felt pain in his right shoulder and arm, while Zawadzki was "more in shock." Garcia had no movement in his right hand, so he used his left to open the passenger side door and exit the SUV, while Zawadzki proceeded to the backseat to comfort their daughter who was crying. Zawadzki and Garcia did not request an ambulance at the scene. According to Garcia, although the SUV sustained damage in the collision, and subsequently needed repairs, "surprisingly it wasn't that bad" because it "sits pretty high" so "the bumper absorbed most of the hit." Because the SUV was operational after the collision, after speaking with the police, Zawadzki drove Garcia and their daughter home in it.

¶ 11    Zawadzki testified that although she did not think she was injured during the collision, later that same night, she began experiencing pain radiating from her neck to her right arm, through her back and down her right leg. Zawadzki went to the emergency room (ER) early next morning. After being treated there, she was subsequently seen by Dr. Blair Rhode, who ordered MRIs of her neck and back, which revealed two bulging discs. Dr. Rhode initially referred Zawadski to physical

therapy, but after that did not work, she was treated by pain management specialist Dr. Chundri, who administered two injections into her lower back. Zawadzki admitted that before she was given her second pain injection, on July 31, 2019, she fell on her tailbone, necessitating a separate visit to the ER.

¶ 12     Garcia testified that he first sought medical treatment a week after the accident because he believed his arm would get better on its own. After an MRI, Dr. Rhode informed Garcia that he had a "massive rotator cuff tear" and needed surgery. On July 16, 2019, Garcia underwent shoulder surgery, after which he wore a brace and did physical therapy for four months. In that time, he was unable to work or enjoy his every day activities.

¶ 13     With respect to damages, each party presented its own expert witnesses. The record before us, however, is unclear as to how, and to what extent, this evidence was presented to the jury—*i.e.* by way of the expert's testimony or the presentation of portions of the experts' prerecorded videotaped evidence depositions. Nonetheless, because the parties seemingly agree as to the identity of the experts and the substance of the evidence they offered, we briefly summarize it here.

¶ 14     Dr. Rhode, Zawadzki's and Garcia's treating physician, who is board-certified in orthopedic and sports medicine, testified that he diagnosed Zawadzki with a cervical, thoracic, and lumbar sprain, a protruding disc at T7-T8, an annular bulge at C4-C6, facet arthrosis, and loss of lordosis. Without the benefit of an MRI taken prior to the accident to rule out if any of these were preexisting conditions, Dr. Rhode could not be certain that the car crash was the sole cause of Zawadzki's injuries and, instead, opined that the injuries were either caused or aggravated by that car crash. Dr. Rhode further testified that Zawadzki's treatment (*i.e.*, ER visit, MRIs, physical therapy and two pain injections) was necessary and the costs reasonable. On cross-examination, Dr. Rhode admitted that he was unaware that while being treated for her crash-related injuries

Zawadzki fell and injured her tailbone and acknowledged that such a fall could have affected her lumbar spine and exacerbated the need for her second pain management injection. Dr. Rhode further testified that he diagnosed Garcia with a full thickness rotator cuff tear and cervical strain, and opined that these injuries were caused by the car crash. According to Dr. Rhode, Garcia's subsequent surgery and physical therapy were necessary and the costs reasonable.

¶ 15    Defense expert, and board-certified orthopedic surgeon, Dr. Jason Rotstein, who reviewed Garcia's medical records and deposition testimony, opined that it was more probably true than not (*i.e.*, a greater than 50 percent likelihood) that Garcia sustained the rotator cuff tear in the car accident. However, according to Dr. Rotstein there was no "definitive evidence of a mechanism of injury during the accident to result in the rotator cuff tear." Dr. Rotstein also opined that except for the administration of stem cells during Garcia's shoulder surgery, Garcia's treatment was "for the most part" appropriate and necessary.

¶ 16    Defense expert, and board-certified pain medicine and physical rehabilitation specialist, Dr. Karina Bouffard testified that after reviewing Zawadzki's medical records, the parties' interrogatories, and photos of the two vehicles involved in the collision, it was her opinion that Zawadzki only sustained cervical and lumbar sprains in the car crash. Dr. Bouffard testified that these injuries should have been treated and could have been resolved by four to six weeks of physical therapy, rest, and medication. According to Dr. Bouffard, the lower back pain management injections given to Zawadzki were not reasonable nor necessitated by the car crash as they were treating an underlying degenerative condition (*i.e.,* lumbar spondylosis). Dr. Bouffard acknowledged, however, that this preexisting condition could have been worsened or exacerbated by the car crash.

¶ 17    Registered nurse and certified professional medical coder, Mary Rossi, testified that she

reviewed the plaintiffs' medical records and bills. Among other things, Rossi challenged certain billing practices used by the providers and opined that of the $76,330.44 charged for Zawadzki's treatment, the reasonable value was $44,153.77, and of $96,353.12, charged for Garcia's treatment, the reasonable value was $30,755.42.

¶ 18    After hearing closing arguments, the jury deliberated for two and a half hours, after which it returned a verdict in favor of the defendants and against each plaintiff. Judgement was entered for the defendants and against the plaintiffs on June 10, 2024. After several extensions, on November 8, 2024, the plaintiffs filed a posttrial motion seeking a new trial. The plaintiffs argued that the jury's verdict was against the manifest weight of the evidence, the jury ignored the tendered jury instructions, and they were prejudiced by several improper jury instructions. In support, the plaintiffs attached an affidavit from their counsel, attesting that after trial she spoke with the jury foreman who informed her that the jury was confused as to how to render a verdict in favor of Garcia as they believed Zawadzki shared some portion of liability but the verdict forms did not explain what to do in that situation.

¶ 19    After the parties briefed the motion, the circuit court held a hearing on May 1, 2025. The record before us, however, does not contain a transcript from that hearing, or any acceptable substitute, such that we cannot know what transpired there. The record only contains the circuit court's August 4, 2025, written order denying the plaintiffs' motion for a new trial, from which the plaintiffs now appeal.

¶ 20                                    II. ANALYSIS

¶ 21                                    A. Jury Verdict

¶ 22    On appeal, the plaintiffs first argue that the circuit court should have granted their motion for a new trial because the jury's verdict was against the manifest weight of the evidence. We

disagree.

¶ 23    It is axiomatic that when a party files a posttrial motion seeking a new trial, the circuit court weighs the evidence and may set aside the verdict and order a new trial where "the verdict is 'contrary to the manifest weight of the evidence.' " *Hassard v. DS Retail, L.L.C.*, 2023 IL App (4th) 220687, ¶ 32 (quoting *Hamilton v. Hasting*, 2014 IL App (4th) 131021, ¶ 26); see also *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence." (Internal quotation marks omitted.) *Hassard*, 2023 IL App (4th) 220687, ¶ 32. A reviewing court will not reverse the circuit court's ruling on a motion for a new trial absent an abuse of discretion. *Id.* "This is so because the trial judge had the benefit of observing the witnesses firsthand and the trial and credibility issues may have been relevant to the jury's verdict." *Hamilton*, 2014 IL App (4th) 131021, ¶ 26; *Maple*, 151 Ill. 2d at 456. In deciding whether the circuit court abused its discretion, we consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Hassard*, 2023 IL App (4th) 220687, ¶ 32.

¶ 24    In the present case, to succeed on a negligence claim, the plaintiffs were required to prove that: (1) the defendants (Burgin individually and Fix It vicariously) owed them a duty of care; (2) the defendants breached that duty; and (3) the breach was the proximate cause of their injuries. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235-35, (2010); *Trigsted v. Chicago Transit Authority*, 2013 IL App (1st) 122468, ¶ 52. While the driver of a vehicle generally has "a duty to see other cars traveling ahead in the traffic lane and to be sufficiently in control of his vehicle so as to be able to stop it without running into other traffic lawfully on the road," a rear-end collision does not itself automatically create a legal inference that the driver of the rear car was negligent.

*Kropalski v. Lyman*, 114 Ill. App. 3d 563, 566 (1983). Instead, the jury, as the trier of fact, must determine whether the rear driver was acting reasonably under the circumstances and whether the accident was avoidable. *Id*. Similarly, whether proximate cause exists is a question of fact reserved for the jury. *Krywin*, 238 Ill. 2d at 226.

¶ 25    In the present case, the jury heard contradictory versions regarding the accident. While the parties agreed that conditions were poor and the roadway was wet, they disagreed as to who was responsible for the collision. On one hand, the plaintiffs claimed that throughout the incident they were travelling northbound in the central lane of Cicero Avenue, and that they did not see or anticipate Burgin's van until he rear-ended their SUV. On the other hand, Burgin testified that shortly before the collision, the plaintiffs made a sudden lane change from the right into the central lane, such that despite his best efforts to avoid them by pressing on his breaks as hard as he could, his van slid into their SUV.

¶ 26    Based on this evidence, and their ability to observe the demeanor of each witness, the jury was well within its province to choose which version of events to believe. See *Maple*, 151 Ill. 2d at 452 ("Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony."). We find nothing manifestly erroneous in its decision to credit Burgin's testimony over that of the plaintiffs and render a verdict in favor of the defendants solely on liability. Since the jury's verdict was supported by the evidence, we find no abuse of discretion in the circuit court's order denying the plaintiffs' request for a new trial. *Hassard*, 2023 IL App (4th) 220687, ¶ 32.

¶ 27    To the extent that the plaintiffs argue that in denying their motion for a new trial, the circuit court improperly evaluated the parties' evidence regarding damages, we disagree. In its

written order denying that motion, the circuit court explicitly stated that, given that the jury found in favor of the defendants as to each of the plaintiff's negligence, it did not consider the damages analysis in its decision. The court merely commented that the plaintiffs' damages and the nature and extent of their injuries were also disputed at trial and that the jury therefore may have been persuaded by this testimony. The court, nonetheless, explicitly found that there was sufficient evidence presented at trial for the jury to conclude that the defendants were not at fault for the accident, supporting a verdict for the defendants solely on the issue of liability.

¶ 28                                      B. Jury Instructions

¶ 29    The plaintiffs next argue, just as they did before the circuit court, that they are entitled to a new trial based on several errors arising from the jury instructions. First, the plaintiffs assert that the jury disregarded two jury instructions informing them that the "rights of the plaintiffs, Zawadzki and Garcia" were "separate and distinct" and that "contributory negligence did not apply to Garcia." See Illinois Pattern Jury Instructions, Civil (hereinafter IPI Civil), Nos. 11.02 and 41.01 (2011). The plaintiffs argue that because there was no evidence that "Garcia did anything wrong," and there was no dispute that he suffered an injury, had the jury followed these instructions, it could not have ruled in favor of the defendants and did so, as per the jury foreman's posttrial comments to their attorney, only because it was not given an appropriate verdict form. The plaintiffs assert that the jury should have been given a modified version of IPI Civil No. 45.03(A) (2011), which it calls "Verdict Form B2," under which it would have been permitted to consider Zawadzki's contributory negligence in the context of the defendants' liability to Garcia. Lastly, the plaintiffs argue that the jury should not have been instructed that in deciding Zawadzki's negligence, it could consider whether Zawadzki violated the following statute, which was in effect in Chicago at the time of the accident: "A vehicle shall be driven as nearly as practicable entirely

10

within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 11-709(a) (West 2020). See with IPI Civil No. 60.01 (2011).

¶ 30    The defendants contend that the plaintiffs' arguments regarding the jury's failure to follow the given instructions are purely conclusory, that the jury foreman's comments to the plaintiffs' attorney did not entitle them to a new trial[1], and that any objections the plaintiffs now have to the tendered jury instructions being improper are waived since they did not object to them at trial. In addition, the defendants assert that contrary to the plaintiffs' assertion, "Verdict Form B2" and all other references to Zawadzki's comparative fault in causing Garcia's injuries were removed from the jury instructions after the parties reached a settlement on the defendants' counterclaim against Zawadzki.

¶ 31    For the following reasons, we affirm the judgment of the circuit court with respect to any claims arising from the jury instructions. Our supreme court has repeatedly held that the burden is on the appellant to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal. *Corral v. Mervis Industries, Inc.,* 217 Ill. 2d 144, 156 (2005); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); see also *Dargis v. Paradise Park, Inc.,* 354 Ill. App. 3d 171, 176 (2004). A reviewing court "is not a

---

[1] See *Redmond v. Socha*, 216 Ill. 2d 622, 636 (2005) ("The law in Illinois is clear on the subject of the use of juror testimony or affidavits for the purpose of impeaching a verdict. Juror testimony or affidavit will not be admitted to show the motive, method, or process by which the jury reached its verdict. *** This rule serves to protect not only the finality of judgments but the privacy of the jury room. In addition *** it protects [the] jurors from being " ' "harassed and beset by the defeated party" ' " post-trial in an effort to upset an unfavorable outcome [Citations]"); *Taylor v. R.D. Morgan & Assoc., Ltd.*, 205 Ill. App. 3d 682, 692 (1990) ("It is well established in this State, and almost universally recognized, that a jury may not impeach its verdict by affidavit or testimony which shows the motive, method or process by which the verdict was reached. The authorities are in accord that the testimony or affidavits of jurors cannot be used to show that the jury misunderstood the instructions or the law."); see also *Chalmers v. City of Chicago*, 88 Ill. 2d 532, 537 (1982) (same).

depository in which an appellant may dump its arguments without factual foundation in the hopes that [this court] will sift through the entire record to find support for a determination favorable to appellant's position." *Coffey v. Hancock*, 122 Ill. App. 3d 442, 444 (1984). In the absence of an adequate record supporting the plaintiffs' claims of error, we must resolve "[a]ny doubts which may arise from [that] incompleteness *** against the appellant[s]," and will presume that the circuit court's order had a sufficient factual basis and that it conforms with the law. *Foutch*, 99 Ill. 2d at 392; see also *Corral*, 217 Ill. 2d at 157; *Webster*, 195 Ill.2d at 432; .

¶ 32    Here, the plaintiffs' claimed errors arise from the tendered jury instructions. Yet, the record before us does not contain those instructions. As previously noted, we are without a report of the proceedings and therefore without a transcript of the trial judge's charge to the jury. While the common law record contains some of the parties' proposed instructions, and an excerpt from a portion of the jury instruction conference, neither clearly establishes which of the proposed instructions were ultimately tendered to the jury. In fact, that excerpt of the jury instruction conference ends in the trial judge inviting the parties to "shoot [her] an email" if "there's an issue and there is something you're not able to work out, just send me the instruction. You know, if there's one you're not sure what you want to do with it and you're having a dispute, just send it to me."

¶ 33    In its written order denying the plaintiffs' motion for a new trial based on the same instructional errors the plaintiffs raise in this appeal, the circuit court stated that "the parties presented [it] with  a combined set of proposed jury instructions" and that the plaintiffs subsequently made no objections to the instructions ultimately tendered to the jury. Given that "the plaintiffs made no objections" to these tendered jury instructions, the court concluded that the plaintiffs' claims were waived. See *Studt v. Sherman Health Systems*, 2011 IL 108182 ¶ 28 (to

challenge a jury instruction, a party must make a specific objection and tender an alternative instruction at the jury instruction conference, thereby giving the trial court an opportunity to correct the problem).

¶ 34    In the absence of a complete record and the ability to ascertain which instructions were tendered, which alternatives, if any, were proposed, and whether and how the instructions impacted the jurors' ability to apply the law to the facts of this case, we must resolve any doubts arising from such incompleteness against the appellants, and conclude that the circuit court's order had a sufficient factual basis and was in conformity with the law. See *Corral*, 217 Ill. 2d at 156 (holding that absent an adequate record preserving the claimed error, a reviewing court will presume that the circuit court's ruling was in conformity with the law and had a sufficient factual basis, and any doubts arising from the incompleteness of the record will be resolved against the appellant, and the order of the circuit court will be affirmed). Accordingly, we find no error in the circuit court's denial of the plaintiffs' motion for a new trial.

¶ 35                                III.  CONCLUSION

¶ 36    For these reasons, we affirm the judgment of the circuit court.

¶ 37    Affirmed.